IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAYLA STOCKDALE,<br>    Plaintiff,<br><br>v.<br><br>ALLSTATE FIRE AND CASUALTY<br>INSURANCE COMPANY,<br>    Defendant. | CIVIL ACTION<br><br><br><br>NO. 19-845 |

## OPINION

This case presents an unresolved question of Pennsylvania law: What effect should be given to *Gallagher v. GEICO Indemnity Co.*, 201 A.3d 131 (Pa. 2019), a Pennsylvania Supreme Court decision that held a particular insurance exclusion—called the "household exclusion"—violated the Pennsylvania Motor Vehicular Financial Responsibility Law, 75 Pa. C.S.A. §§ 1701 *et seq.* ("MVFRL")? Plaintiff argues that, as is generally the case, the holding should be applied to cases brought after *Gallagher* was decided, but concerning events that predate the decision. Defendant, however, argues that an exception to that general rule is in order here and that *Gallagher* should be applied only to cases arising out of events that postdate the decision. As explained below, no exception is warranted here and Defendant's motion to dismiss the Complaint will be denied accordingly.

 **I. LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When analyzing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the

plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "[U]nder Rule 12(b)(6), the defendant has the burden of showing no claim has been stated." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

Where, as here, a federal court has authority to hear a suit by virtue of diversity jurisdiction, the court must apply state substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). "When interpreting state law, [federal courts] follow a state's highest court; if that state's highest court has not provided guidance, [federal courts] are charged with predicting how that court would resolve the issue. . . . tak[ing] into consideration: (1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue." *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016) (quoting *Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011)).

## II. FACTUAL BACKGROUND

Plaintiff, Kayla Stockdale, is a Pennsylvania resident who, at all times relevant here, resided with her parents, Mark and Jacqueline Sanders. Both Plaintiff and her parents held car insurance policies with Defendant, Allstate Fire and Casualty Insurance Company. Plaintiff's policy (the "Stockdale Policy") provided $25,000 in uninsured and underinsured motorist coverage for the one vehicle covered by the policy;[1] her parent's policy (the "Sanders Policy") provided $100,000 in uninsured and underinsured motorist coverage for each of the three vehicles covered by that policy—none of which were the vehicle covered by the Stockdale Policy. The Sanders also paid to "stack" their underinsured motorist coverage, meaning the

---

[1] "[Uninsured or 'UM'] coverage applies when an insured suffers injury or damage caused by a third-party tortfeasor who is uninsured, whereas [Underinsured or 'UIM'] coverage is triggered when a third-party tortfeasor injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full." *Gallagher*, 201 A.3d at 132 n.1.

2

Sanders elected to combine the insurance coverage of individual vehicles within their policy ("intra-policy stacking") and across policies ("inter-policy stacking") to increase the amount of total coverage available.[2]

On June 10, 2017, while riding as a passenger in the vehicle covered by the Stockdale Policy, another driver, Ronald Pagliei, collided with Plaintiff's vehicle. She suffered severe and permanent injuries as a result of the accident, and sought recovery for those injuries. Plaintiff first made a claim against Pagliei. With the approval of Defendant, she settled that claim for $100,000, the limit of liability coverage under Pagliei's policy. Plaintiff also made a claim for underinsured motorist coverage under the Stockdale Policy. Defendant approved the claim and provided her with $25,000, the limit of underinsured motorist coverage under the Stockdale Policy.

The combined recovery, however, was insufficient to meet Plaintiff's medical needs. Accordingly, on February 7, 2018, Plaintiff made a claim under the Sanders Policy for underinsured motorist coverage, on the ground that the Sanders Policy provided that Defendant "will pay damages to an insured person for bodily injury which an insured person is legally entitled to recover," and defined "insured person" to include "any resident relative" of Mark Sanders. Because she lived with her parents at the time of the accident, Plaintiff claimed she was eligible to stack the underinsured coverage provided in the Sanders Policy with the underinsured coverage provided in the Stockdale Policy.

On February 14, 2018, Defendant denied the claim. It premised the denial on a provision

---

[2] To give a stylized example of how stacking works, imagine an insured with two insurance policies. The first covered her family's two automobiles and provided $10,000 in underinsured motorist coverage per vehicle. The second covered the insured's motorcycle and provided $5,000 in underinsured motorist coverage for her bike. If the insured elected to "stack" her coverage, then she could recover a total of $25,000 in underinsured motorist coverage for an accident involving any of the vehicles—$20,000 in coverage from the first policy (intra-policy stacking) plus the $5,000 from the second (inter-policy stacking).

of the Sanders Policy called the "household exclusion," which provided that:

> Allstate will not pay any damages an insured person is legally entitled to recover because of . . . bodily injury to you or a resident relative while in, on, getting into or out of or when struck by a motor vehicle owned or leased by you or a resident relative which is not insured for Underinsured Motorist Coverage under this policy.

Because she was not riding in one of the three vehicles covered by the Sanders Policy, Defendant claimed that the household exclusion rendered Plaintiff ineligible to stack coverage across the Sanders and Stockdale Policies.

On January 23, 2019, the Pennsylvania Supreme Court issued its decision in *Gallagher*, holding that "the household vehicle exclusion violates the MVFRL; therefore, these exclusions are unenforceable as a matter of law." 201 A.3d at 138. The *Gallagher* Court explained that while the MVFRL allows insureds "to waive stacked coverage," the statute nevertheless "makes clear that [to do so], an insurer must provide the insured with a statutorily-prescribed waiver form." *Id.* at 137. The household exclusion, however, "acts as a *de facto* waiver of stacked UIM coverage" because "in reality, the household exclusion ensures that . . . UIM coverage could never be stacked with the coverage under" other policies. *Id.* at 137-38. The exclusion thus "violates the clear mandates of the waiver provisions of Section 1738 [of the MVFRL]," because it "deprive[s insureds] of the stacked UIM coverage that [they] purchased," "render[ing] the household vehicle exclusion invalid and unenforceable." *Id.* at 138.

Plaintiff filed her Complaint the day the *Gallagher* Court announced its opinion, bringing claims for individual and class relief. As to the former, Plaintiff seeks $300,000 in underinsured benefits from the Sanders Policy. As to the latter, Plaintiff seeks to:

> [R]epresent a class of persons injured in motor vehicle accidents from 1990 to the present as a result of the negligence of an uninsured or an underinsured motorist who were insureds under Automobile Policies providing uninsured and/or an underinsured motorist coverage in accordance with the MVFRL and where: (a)

the named insured elected stacked uninsured and underinsured motorist coverage; (b) the named insured paid an additional premium for stacked uninsured and/or underinsured motorist coverage; (c) a claim was made for recovery of uninsured and/or underinsured motorist coverage under the policy; (d) the claim for recovery of uninsured or underinsured motorist coverage was denied by reason of the household exclusion; and (e) inter-policy stacking of underinsured motorist benefits was denied to an otherwise eligible claimant by reason of the household exclusion where, nonetheless, the named insured had elected and paid for stacked uninsured and/or underinsured motorist coverage under the policy.

Defendant now moves to dismiss Plaintiff's Complaint for failure to state a claim, or else dismiss the putative class action claims to the extent they are time-barred by Pennsylvania's four-year statute of limitations for contract claims.

### III. DISCUSSION

#### A. Effect of *Gallagher*

Defendant denied Plaintiff's claim for underinsured motorist benefits based on the household exclusion in the Sanders Policy, an exclusion the *Gallagher* Court found "unenforceable." *Id.* at 138. Defendant does not argue that this case is factually distinct from *Gallagher* is some material way. The only issue, then, is whether *Gallagher*'s holding should be applied here—a case brought after the Pennsylvania Supreme Court issued *Gallagher*, concerning events that predate that decision.

Generally, under Pennsylvania law, a rule announced by a judicial decision is applied both retroactively—that is, to pending cases—and prospectively—to cases commenced thereafter. *See In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013); *Cleveland v. Johns-Manville Corp.*, 690 A.2d 1146, 1150 n.8 (Pa. 1997). Indeed, "[j]udicial decisions have had retrospective operation for near a thousand years." *Gibson v. Com.*, 415 A.2d 80, 84 (Pa. 1980) (quoting *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 (1910) (Holmes, J., dissenting)).

Recently, however, rare exceptions to this general rule have been permitted. *See Gibson*,

415 A.2d at 84 ("Only recently have courts limited the full effect of their decisions."); *see, e.g.*, *In re L.J.*, 79 A.3d at 1087 (noting that courts may apply a decision "prospectively only" where the rule "involves a procedural matter" or "involves common law development") (internal quotation marks omitted); *Stackhouse v. Stackhouse*, 862 A.2d 102, 108 (Pa. Super. 2004) (limiting the prospective application of a judicial decision). The Pennsylvania Supreme Court has explained that an exception may be appropriate where there is a "substantial question that persons formerly advantaged by the old rule will be unfairly prejudiced" by the new rule. *Blackwell v. Com., State Ethics Comm'n*, 589 A.2d 1094, 1101 (Pa. 1991).

Accordingly, in determining the effect of a judicial decision, the Pennsylvania Supreme Court has instructed that the threshold question is "whether the decision announced a new rule of law," *Passarello v. Grumbine*, 87 A.3d 285, 307 (Pa. 2014), as only a new rule may warrant an exception to the retroactive/prospective rule, *Schreiber v. Republic Intermodal Corp.*, 375 A.2d 1285, 1289 (Pa. 1977). If the decision in question announced a new rule of law, then the court must determine whether there is a "substantial question that persons formerly advantaged by the old rule will be unfairly prejudiced" by application of the new rule. *Blackwell*, 589 A.2d at 1101. In making that determination, courts consider: "(1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the effect on the administration of justice[.]" *Id.* at 1099.

The gravamen of this dispute, then, is whether *Gallagher* warrants an exception to the general retroactive/prospective rule. Plaintiff argues that no exception is required, and the rule announced in *Gallagher* should be applied here. Defendant, on the other hand, argues that this is one of the rare instances where an exception is appropriate. Specifically, Defendant argues *Gallagher* should be given purely prospective effect only—that is, *Gallagher* should not apply to

cases, such as this, where the operative facts predate the pronouncement of the decision.[3]

Whether to depart from the general retroactive/prospective rule "is a matter of judicial discretion" that "must be exercised on a case by case basis." *In re L.J.*, 79 A.3d at 1087; *Cleveland*, 690 A.2d at 1151-52 ("Retroactive application is a matter of judicial discretion and must be exercised on a case by case basis.").[4] Here, while *Gallagher* announced a new rule of law, nothing about the decision requires an exception to the general rule of prospective and retroactive application.

### 1. New Rule

As previously stated, the "threshold test" for whether to depart from the general retroactive/prospective rule "is whether the decision establishes a new principle of law." *Schreiber,* 375 A.2d at 1289. "A decision announces a new rule of law if it overrules prior law, expresses a fundamental break from precedent that litigants may have relied on, or decides an issue of first impression not clearly foreshadowed by precedent." *Passarello*, 87 A.3d at 307. "One of the hallmarks of whether [the Pennsylvania Super Court] has issued a new rule of law is if the decision overrules, modifies, or limits any previous opinions of [the Pennsylvania Supreme Court]." *In re L.J.*, 79 A.3d at 1087.

Where, as here, the decision at issue was one of statutory interpretation, the Pennsylvania

---

[3] Defendant frames the issue as whether *Gallagher* should be applied prospectively only. But, Plaintiff commenced her suit after *Gallagher* was issued; thus, even if the decision were to be applied prospectively only—as Defendant suggests—the rule from *Gallagher* would still govern Plaintiff's claim. Instead, Defendant argues that because it entered into the Sanders Policy and denied Plaintiff's claim all before *Gallagher* was decided, the decision should play no part here. Thus, Defendant seeks to restrict the application of *Gallagher* to those cases where the operative facts of the case postdate the decision entirely, what the Pennsylvania Supreme Court has described as "purely prospective effect." 690 A.2d at 1150 n.8 (quoting *Blackwell*, 589 A.2d at 1103 (Zappala, J., concurring)).

[4] While the question is squarely before this federal Court and will likely have a significant impact on both insured and insurers alike in Pennsylvania, the issue is decidedly a matter of state law, requiring this Court to predict how the Pennsylvania Supreme Court would resolve the matter . *Blackwell*, 589 A.2d at 1099 ("The question of whether a state court decision announcing a new rule is to be applied retroactively or prospectively is squarely within the province of the state courts.").

Supreme Court's "first pronouncement on the substance of a statutory provision," does not "announce a new rule of law." *Fiore v. White*, 757 A.2d 842, 848 (2000). Thus, where the Pennsylvania Supreme Court has "not yet answered a specific question about the meaning of a statute, [the Court's] initial interpretation does not announce a new rule of law." *Id.* Accordingly, the salient question is whether the Pennsylvania Supreme Court had previously answered the specific question of whether the household exclusion violates Section 1738 of the MVFRL by acting as a *de facto* waiver of stacked uninsured and underinsured motorist coverage.

To answer that question, a brief history of the household exclusion's pre-*Gallagher* treatment under Pennsylvania law is required. To start, in both *Eichelman v. Nationwide Insurance Co.*, 711 A.2d 1006 (Pa. 1998) and *Prudential Property & Casualty Insurance Co. v. Colbert*, 813 A.2d 747 (Pa. 2002), the Pennsylvania Supreme Court held that the household exclusion did not violate the "underlying public policy of the MVFRL." *Prudential*, 813 at 755; *Eichelman*, 711 A.2d at 1010 ("[A]llowing the 'household exclusion' language to stand supports the legislatively stated public policy of reducing insurance costs."). But in both *Eichelman* and *Colbert*, the Pennsylvania Supreme Court was not presented with the exact question of whether the household exclusion violated Section 1738 of the MVFRL by acting as a de facto waiver— the decisions spoke in terms of the "public policy of the MVFRL" generally. *Prudential*, 813 at 755; *Eichelman*, 711 A.2d at 1010

However, in *Erie Ins. Exchange v. Baker*, 972 A.2d 507 (Pa. 2008), the Pennsylvania Supreme Court was specifically called on to "decide whether the so-called 'household exclusion' in a motor vehicle insurance policy is valid and enforceable to preclude the payment of underinsured motorist benefits." *Id.* at 508. The "novel argument" presented to the court was that "the household exclusion violates the Motor Vehicle Financial Responsibility Law

8

(MVFRL), specifically the provisions regarding stacking contained in [Section 1738]," because "the household exclusion is a 'disguised waiver' which skirts the express waiver requirements of the MVFRL." *Id.* at 509, 511. Across two opinions, a majority of the Pennsylvania Supreme Court rejected the argument, finding that the household exclusion did not violate the waiver requirement of Section 1738 of the MVFRL.[5] *Id*. at 511; *Baker*, 972 A.2d at 514 (Saylor, J., concurring); *see also Williams v. GEICO*, 32 A.3d 1195, 1208 (2011) ("A majority of this Court [in *Baker*] held that the MVFRL's stacking provisions did not preclude application of the household exclusion."); *Gallagher*, 201 A.3d at 142 n.6 (Wecht, J., dissenting) (noting that or to *Gallagher* "state and federal courts across the Commonwealth . . . consistently rejected this interpretation of the MVFRL.") (collecting cases).

In *Gallagher*, however, the Pennsylvania Supreme Court switched courses, and struck down the household exclusion as "unenforceable." 201 A.3d at 137-38. Far from the "first pronouncement on the substance of a statutory provision," *Fiore*, 757 A.2d at 848, the *Gallagher* Court revisited the precise question addressed by *Baker*—whether the household exclusion violated Section 1738, by acting as a *de facto* waiver of stacked coverage—but provided an altogether different answer. The rule in *Gallagher* therefore "expresse[d] a fundamental break

---

[5] The majority splintered as to grounds for that decision. While noting that petitioner's Section 1738 argument was "initially interesting," the plurality "[u]ltimately," concluded that "[petitioner's] argument fails" because *Eichelman* and *Colbert* controlled the issue. *Baker*, 972 A.2d at 511. Specifically, the plurality reasoned:

> Because this Court has upheld the household exclusion in the face of public policy challenges, the argument [petitioner] makes that the exclusion actually violates a statute is technically a new one. But the argument is unavailing because an enactment by the legislature—such as the MVFRL—is indeed the embodiment of public policy. We are not persuaded that our earlier decisions on this issue are distinguishable in any material way.

*Id*. at 511 n.7. Justice Saylor concurred in the result, but rejected the plurality's reliance on *Eichelman* and *Colbert* because "in those cases, this Court did not examine the express requirements of the stacking provisions of [Section 1738], upon which [petitioner] relies. Rather, *Colbert* and *Eichelman* were litigated and decided on more general public policy grounds." *Baker*, 972 A.2d at 514 (Saylor, J., concurring). Justice Saylor nevertheless found the Section 1738 argument lacking, reasoning that the waiver provision of the MVFRL "codified in Section 1738 d[id] not invalidate long-standing policy exclusions. . . including . . . [the] household . . . exclusion." *Id.* at 515.

from [a line of] precedent," *Passarello*, 87 A.3d at 307, which "litigants and courts [alike] clearly relied upon," *In re L.J.*, 79 A.3d at 1087; *see, e.g.*, *Williams*, 32 A.3d at 1208; *GEICO v. Ayers*, 955 A.2d 1025, 1030 (Pa. Super. 2008), *aff'd by an equally divided court GEICO v. Ayers*, 18 A.3d 1093, 1093 (Pa. 2008)(upholding the household exclusion based on *Baker*). Accordingly, the Pennsylvania Supreme Court in *Gallagher* announced a new rule of law.

Plaintiff argues that *Gallagher* did not announce a new rule of law because, as a plurality opinion, *Baker* did not constitute binding precedent. *See Butta v. GEICO Casualty Co.*, 2019 WL 1756019 (E.D. Pa. Apr. 19, 2019) (concluding that *Gallagher* did not announce a new rule of law because the holding did "not change binding Pennsylvania law."). But, the question of whether a decision from the Pennsylvania Supreme Court announced a new rule of law is not co-extensive with the question of whether, in reaching that decision, the Court was bound by a prior decision. "A decision announces a new rule of law" not only when "it overrules prior law," but also when it "expresses a fundamental break from precedent that litigants may have relied on . . . or decides an issue of first impression not clearly foreshadowed by precedent." *Passarello*, 87 A.3d at 307; *see also In re L.J.*, 79 A.3d at 1087 (noting that a "hallmark[] of whether this Court has issued a new rule of law is if the decision overrules, *modifies, or limits* any previous opinions of this Court.") (emphasis added); *Fiore*, 757 A.2d at 848 (holding that the Pennsylvania Supreme Court announces a new rule of law not only when "we . . . overrule our prior decision concerning a statute," but also when "we . . . alter" a prior decision).

*In re L.J.* illustrates this point. There, the Pennsylvania Supreme Court addressed the precedential force of a pronouncement contained in a footnote from an earlier decision. The Court concluded that the footnote's pronouncement was not "binding precedent," but found "it prudent to determine whether this decision should be afforded retrospective or prospective

10

application," because lower courts had relied upon the announcement in the past. *Id.* at 1087. The *L.J.* Court then held that the "decision does announce a new rule of law," explaining that "while this decision is not a 'fundamental break from precedent' in that the . . . footnote was never precedential in the first instance, this opinion certainly 'modifies or limits' that footnote and the applicability of [the case from which the footnote came] in Pennsylvania. Accordingly, this opinion constitutes a new rule of law." *Id.* at 1088; *cf. Passarello*, 87 A.3d at 307 (holding a judicial decision announced a new rule of law where "it overruled prior decisions of the Superior Court").

Thus, even where an opinion of the Pennsylvania Supreme Court "modifies . . . or limits," or "alter[s]" a prior, non-precedential decision, that opinion announces a new rule of law. That is precisely what happened in *Gallagher*. Even if the Pennsylvania Supreme Court was not bound by its prior decisions in *Baker*, it nevertheless announced a new rule of law because the decision modified or altered that earlier decisions. Accordingly, the Court concludes that *Gallagher* "announce[d] a new rule of law, such that an examination of retroactive or prospective application is necessary." *In re L.J.*, 79 A.3d at 1087.

### 2. Retroactivity Analysis

Next, the Court must determine what effect to give the rule announced in *Gallagher*. The touchstone of this inquiry is whether there is a "substantial question that persons formerly advantaged by the old rule will be unfairly prejudiced" by application of the new rule. *Blackwell*, 589 A.2d at 1101. In making that determination, courts consider "(1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the effect on the administration of justice[.]" *Blackwell*, 589 A.2d at 1099. Here, the balance of factors weighs against departing from the general retroactive/prospective rule—that is, the factors weight

11

against applying *Gallagher* purely prospectively.

First, the purpose of the *Gallagher* rule would be undermined by limiting its application. The *Gallagher* Court held that the household exclusion "operate[d] as a pretext to avoid stacking," which "violate[d] the clear mandates of the waiver provisions of [the MVFRL]" and "render[ed] the . . . exclusion invalid and unenforceable." 201 A.3d at 138. Subjecting the *Gallagher* rule to selective prospectivity, however, would allow insurance companies to enforce the "unenforceable" exclusion, at least where, as here, the events giving rise to an insured's claim predate the decision. There is no indication that the Pennsylvania Supreme Court intended such an outcome; rather, the *Gallagher* Court held generally that "these exclusions are unenforceable as a matter of law," without any caveat or reservation.

Second, although insurers may have relied on decisions upholding the household exclusion when drafting insurance agreements, that reliance does not justify selective prospectivity. The Pennsylvania Supreme Court in *Gallagher* stated as much: while "recogniz[ing] that this decision may disrupt the insurance industry's current practices," the *Gallagher* Court nevertheless invalidated the household exclusion, explaining "we are confident that the industry can and will employ its considerable resources to minimize the impact of our holding." *Id.* at 138 n.6. In *August v. Stasak*, 424 A.2d 1328 (Pa. 1981), the Pennsylvania Supreme Court reached the same result when considering the retroactive effect of *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193 (1977), which held that an insured's late notice released an insurer only where the late notice was prejudicial, overturning prior Pennsylvania law that strictly enforced notice requirements against insureds. *August,* 424 A.2d at 1329-30. The *August* Court balanced "the hardships to the [insured] against the hardships to the insurer from a retroactive application," and found retroactive effect was warranted. *Id.* at 1331. The *August*

12

Court further explained that it "will not protect the expectations of the company by enforcing an unfair forfeiture provision in an insurance policy" and that "[t]he insurance company has not demonstrated hardships greater than those of the [insured], if it all."[6]

Indeed, in the few cases where Pennsylvania courts have applied judicial decisions in a purely prospective manner, the reliance interests at stake were of a greater magnitude than those at issue here. Most notably, in *Stackhouse*, the Pennsylvania Superior Court held that a Pennsylvania Commonwealth Court decision abolishing common law marriage did not apply to those common law marriages entered into prior to the decision's announcement as doing so would "divest [those who entered into common law marriages prior to the decision] of rights [they] formerly enjoyed and on the existence of which [they] lawfully relied." 852 A.2d at 107. Whereas the "myriad [of] legal rights and entitlements associated with [marriage]," justified pure prospective application there, *id.*, Defendant's contractual interests fall short of requiring such application here.

Finally, the administration of justice cautions strongly against departing from the general rule of retroactive/prospective rule. Applying *Gallagher* purely prospectively would impose an administrative burden on the courts, which would have to engage in difficult line-drawing exercises without clear guidance from the Pennsylvania Supreme Court—such as determining whether *Gallagher* governed cases concerning contracts entered into prior to the decision's pronouncement, but concerning facts that postdate the decision. More fundamentally, pure prospectively breaches the principle that "litigants in similar situations should be treated the same, a fundamental component of *stare decisis* and the rule of law generally." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 537 (1991).

---

[6] Notably, *August* Court did not even entertain the notion that *Brakeman* would not be applied purely prospectively.

This case illustrates that concern. There is no meaningful distinction between Plaintiff and the petitioner in *Gallagher*: both purchased automotive insurance that contained household exclusions; at the time of their respective accidents, Pennsylvania law recognized the validity of the exclusion; and, both had their stacked claim denied on the basis of that exclusion. And yet, under Defendant's approach, the *Gallagher* plaintiff would be entitled to relief, while Plaintiff would not be—simply because she initiated her suit after the plaintiff in *Gallagher* initiated (and won) his. Justice does not countenance such a result. *Gibson*, 425 A.2d at 85 ("There is no principled reasons to discriminate against [Plaintiff] whose cause also accrued before (the overruling decision) . . . both classes of suits affect the Commonwealth in equal measure, and therefore must be treated in like fashion." *Gibson*, 425 A.2d at 85

Thus, the Court predicts that, as is generally the case, the Pennsylvania Supreme Court would apply *Gallagher* both retroactively and prospectively, and Defendant's motion to dismiss Plaintiff's claim will be denied accordingly.

### B. Class Allegations

Defendant argues, in the alternative, that even if *Gallagher* controls this case, claims asserted on behalf of the putative class predating 2015 should be dismissed as time-barred. *Cf. Beam*, 501 U.S. at 541 ("Of course, retroactivity in civil cases must be limited by the need for finality . . . once suit is barred by res judicata or by statutes of limitation or repose, a new rule cannot reopen the door already closed.") (internal citations omitted). While "[a] statute of limitations defense is an affirmative defense that a defendant must usually plead in his answer," a court "may grant a motion under Rule 12(b)(6) raising a limitations defense if 'the face of the complaint' demonstrates that the plaintiff's claims are untimely." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)).

14

The parties agree that, under Pennsylvania law, the putative class claims are subject to a four-year statute of limitations. *See* 42 Pa. C.S.A. § 5525(a); *Erie Ins. Exch. v. Bristol*, 174 A.3d 578, 582 (Pa. 2017); *cf. Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) ("[A] federal court must apply the substantive laws of its forum state in diversity actions . . . and these include state statutes of limitations.") (internal citations omitted). And in *Erie*, the Pennsylvania Supreme Court held that "for the purposes of UM and [UIM] claims . . . the running of the statute is commenced upon an alleged breach of a contractual duty, which . . . would be occasioned by the insurer's denial of coverage or refusal to arbitrate." 174 A.3d at 580.

Here, Plaintiff seeks to "represent a class of persons injured in motor vehicle accidents from 1990 to the present," who were denied coverage "by reason of the household exclusion." The face of the Complaint demonstrates, however, that the statute of limitations bars claims in which an insurer denied coverage or refused to arbitrate because of the household exclusion prior to January 23, 2015—four years before Plaintiff filed this putative class action. Accordingly, putative class members' claims based upon a breach of an alleged insurance contract "by reason of the household exclusion" prior to January 23, 2015 are time-barred, and will be dismissed. *See Lanning v. SEPTA*, 176 F.R.D. 132, 148 (E.D. Pa. 1997) (holding on a motion to dismiss that putative class claims were time-barred); *Vinson v. Seven Seventeen HB Philadelphia Corp.*, 2001 WL 1774073, at *11 (E.D. Pa. Oct. 31, 20) (finding portion of putative class's claims untimely, and recommending those putative class claims be dismissed).

An appropriate order follows.

| | |
|---|---|
| **June 17, 2019** | **BY THE COURT:** |
| | **/s/Wendy Beetlestone, J.** |
| | **WENDY BEETLESTONE, J.** |