# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KAYLA STOCKDALE,**<br>　　　　**Plaintiff,** | **CIVIL ACTION** |
| v. | |
| **ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,**<br>　　　　**Defendant.** | **NO. 19-845** |

## MEMORANDUM OPINION

This case addresses the scope of the Pennsylvania Supreme Court's decision in *Gallagher v. GEICO Indemnity Co.*, 201 A.3d 131 (Pa. 2019). Specifically, it addresses the extent to which *Gallagher* found the "household exclusion" inconsistent with the Pennsylvania Motor Vehicle Financial Responsibility Law's ("MVFRL"), 75 Pa. C.S.A. §§ 1701 *et seq.*, requirement that insureds knowingly waive stacked coverage. Defendant argues that *Gallagher* should be read narrowly; should not be understood as invalidating the exclusion entirely; and does not apply in this case. Plaintiff argues that *Gallagher* should be read broadly and does apply in this case.[1] Because the Pennsylvania Supreme Court invalidated the household vehicle exclusion in *all* personal auto insurance policies in which such an exclusion operates as a *de facto* waiver of stacked coverage, Defendant's Motion for Summary Judgment will be denied and Plaintiff's Partial Motion for Summary Judgment will be granted.

## I. FACTS[2]

The following facts are not in dispute. Plaintiff, Kayla Stockdale, is a Pennsylvania

---

[1] Plaintiff sues on behalf of herself and similarly situated persons. However, a class has yet to be certified in this case.

[2] Portions of the fact section are taken directly from the Court's June 17, 2019 Opinion granting in part and denying in part Defendant's motion to dismiss. *See Stockdale v. Allstate Fire & Cas. Ins. Co.*, 390 F. Supp. 3d 603, 605 (E.D. Pa. 2019). No discovery was conducted in this case and the facts remain the same as they were at the motion to dismiss stage.

resident who, at all times relevant here, resided with her parents, Mark and Jacqueline Sanders. Both Stockdale and her parents held car insurance policies with Defendant, Allstate Fire and Casualty Insurance Company.

Stockdale's policy (the "Stockdale Policy") provided $25,000 in uninsured and underinsured motorist coverage for her one vehicle,[3] while her parents' policy (the "Sanders Policy") provided $100,000 in uninsured and underinsured motorist coverage for each of their three vehicles. The Sanders also paid to "stack" their underinsured motorist coverage, meaning the Sanders elected to combine the insurance coverage of individual vehicles within their policy ("intra-policy stacking") and across policies ("inter-policy stacking") to increase the amount of total coverage available; Stockdale did not.[4]

On June 10, 2017, while riding as a passenger in her vehicle, Stockdale was injured in a collision with another driver, Ronald Pagliei. Her injuries as a result of the accident were permanent and severe, and she sought recovery for those injuries. Stockdale first made a claim against Pagliei. With the approval of Allstate, she settled that claim for $100,000, the limit of liability coverage under Pagliei's policy. Stockdale also made a claim for underinsured motorist coverage under the Stockdale Policy. Allstate approved the claim and provided her with $25,000, the limit of underinsured motorist coverage under the Stockdale Policy.

The combined recovery, however, was insufficient to meet Stockdale's medical needs.

---

[3] "[Uninsured or 'UM'] coverage applies when an insured suffers injury or damage caused by a third-party tortfeasor who is uninsured, whereas [Underinsured or 'UIM'] coverage is triggered when a third-party tortfeasor injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full." *Gallagher*, 201 A.3d at 132 n.1.

[4] To give a stylized example of how stacking works, imagine an insured with two insurance policies. The first covered her family's two automobiles and provided $10,000 in underinsured motorist coverage per vehicle. The second covered the insured's motorcycle and provided $5,000 in underinsured motorist coverage for her bike. If the insured elected to "stack" her coverage, then she could recover a total of $25,000 in underinsured motorist coverage for an accident involving any of the vehicles—$20,000 in coverage from the first policy (intra-policy stacking) plus the $5,000 from the second (inter-policy stacking).

Accordingly, on February 7, 2018, Stockdale made a claim under the Sanders Policy for underinsured motorist coverage, on the basis that the Sanders Policy provided that Allstate "will pay damages to an insured person for bodily injury which an insured person is legally entitled to recover," and defined "insured person" to include "any resident relative" of the policyholders, Mark and Jacqueline Sanders. Because she lived with her parents at the time of the accident, Plaintiff claimed she was eligible to stack the underinsured coverage provided in the Sanders Policy with the underinsured coverage provided in the Stockdale Policy.

On February 14, 2018, Allstate denied the claim. It premised the denial on a provision of the Sanders Policy called the "household exclusion," which provided that

> Allstate will not pay any damages an insured person is legally entitled to recover because of . . . bodily injury to you or a resident relative while in, on, getting into or out of or when struck by a motor vehicle owned or leased by you or a resident relative which is not insured for Underinsured Motorist Coverage under this policy.[5]

Because she was not riding in one of the three vehicles covered by the Sanders Policy, Allstate claimed that the household exclusion rendered Plaintiff ineligible to stack coverage across the Sanders and Stockdale Policies. Plaintiff subsequently filed her Complaint, bringing claims for individual and class relief and seeking $300,000 in underinsured benefits under the Sanders policy.

Allstate moved to dismiss Stockdale's claim on March 28, 2019. In that motion, Allstate argued that the Pennsylvania Supreme Court's *Gallagher* decision, which had found the household exclusion in the *Gallagher* plaintiff's auto insurance policy unlawful, did not apply to this case because the underlying events had occurred prior to *Gallagher*'s issuance on January 23, 2019. Allstate did not argue, however, that "this case [was] factually distinct from *Gallagher*

---

[5] The terms of Allstate's household exclusion are typical of household exclusions in general and do not differ materially from the terms of the exclusions at issue in the other cases discussed herein.

in [sic] some material way." *Stockdale*, 390 F. Supp.3d at 607. On June 17, 2019, the Court denied Defendant's motion to dismiss in part.[6] *Id.* at 613. The Court found that *Gallagher* had announced a new rule of law and thus applied retroactively to cases such as Plaintiff's which were brought post-*Gallagher* but concerned events which occurred pre-*Gallagher*. *Id.*

Defendant now moves for summary judgment, arguing that the facts of this case are materially distinguishable from those at issue in *Gallagher* and that *Gallagher* does not preclude the application of the Sanders Policy's household exclusion. Defendant also moves for summary judgment on Plaintiff's remaining class claims. Plaintiff cross-moves for partial summary judgment and requests that the Court enter judgment for $300,000[7] against Defendant on the basis that *Gallagher* invalidated the household exclusion in the Sanders Policy.

## II. STANDARD OF REVIEW

These motions are governed by Federal Rule of Civil Procedure 56(a), which provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to material facts and the movant is entitled to judgment as a matter of law." "Since the facts are not in dispute, there is presented solely an issue of law as to which of these parties is entitled to a judgment." *Price v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 1970 WL 791, at *1 (E.D. Pa. Sept. 22, 1970), *aff'd*, 457 F.2d 605 (3d Cir. 1972). Though this case involves motions for summary judgment from both parties, the standards governing summary judgment are "no different where there are cross-motions." *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008) (internal citations omitted).

---

[6] The Court granted Defendant's motion to dismiss class claims stemming from occurrences prior to January 23, 2015 as barred by the statute of limitations.

[7] The parties agree that this is the amount Plaintiff would be entitled to if the household exclusion did not apply.

### III.     DISCUSSION [8]

Section 1738 of the MVFRL "governs the stacking of underinsured motorists benefits as well as the waiver of such stacking." *State Farm Mut. Auto. Ins. Co. v. Powell*, 879 F. Supp. 538, 540 (W.D. Pa. 1995).

> Subsection 1738(a) unambiguously states that the limits of coverage for each vehicle owned by an insured "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." This provision specifically applies "when more than one vehicle is insured under one or more policies" providing for [uninsured and underinsured motorist] coverage. In other words, stacked [uninsured and underinsured motorist] coverage is the default coverage available to every insured and provides stacked coverage on *all vehicles* and *all policies*.

*Gallagher*, 201 A.3d at 137 (internal citations and alterations omitted) (emphasis added). However, "insureds can choose to waive stacked coverage. If an insured decides to waive stacked coverage, then the insured's premiums must be reduced to reflect the different cost of coverage." *Id.* To effectuate such a waiver, "an insurer must provide the insured with a statutorily-prescribed waiver form, which the named insured [*i.e.*, the policyholder] must sign if he wishes to reject the default provision of stacked coverage." *Id.* In determining whether a party is entitled to stacked coverage, "the relevant waiver is the one signed with respect to the policy under which the stacked benefits are being sought." *Donovan v. State Farm Mut. Auto. Ins. Co.*, 392 F. Supp.3d 545, 551 (E.D. Pa. 2019) (citing *Craley v. State Farm Fire & Cas. Co.*, 586 Pa. 484, 536 (2006)).

In *Gallagher*, the Pennsylvania Supreme Court invalidated the household exclusion where such an exclusion operates as a *de facto* waiver of stacked coverage—for example, where the exclusion purports to waive coverage without requiring the insured to sign the statutorily prescribed waiver form. *Id.* at 138.

---

[8] As a federal court siting in diversity, the Court here applies states substantive law, *i.e.*, Pennsylvania law, *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), and is bound by the Pennsylvania Supreme Court's interpretation of Pennsylvania law, *see In re Future Holdings Corp.*, 842 F.3d 247, 253 (3d Cir. 2016).

The facts in *Gallagher*, as here, are straightforward. Plaintiff Gallagher was struck by a truck while riding his motorcycle. *Id.* at 133. At the time of the accident, Gallagher had two insurance policies, both from GEICO—one on his motorcycle, and another on his two automobiles. The motorcycle policy provided for $50,000 of underinsured motorist coverage, and the automobile policy for $100,000 of such coverage. *Id.* Gallagher selected and paid for stacked coverage on both policies. *Id.* When the truck driver's insurance and Gallagher's motorcycle policy were insufficient to cover Gallagher's medical needs, Gallagher sought to recover his stacked benefits and made a claim under his automobile policy. *Id.* GEICO denied the claim pursuant to the household exclusion, however, because both the motorcycle and the automobiles were covered under different policies. *Id.* Gallagher sued GEICO for coverage, and the Pennsylvania Supreme Court ultimately found that the household exclusion,

> buried in an amendment, is inconsistent with the unambiguous requirements Section 1738 of the MVFRL under the facts of this case insomuch as it acts as a de facto waiver of stacked [underinsured motorist] coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed [underinsured motorist] coverage waiver form.

*Id.* at 138. The Court ultimately held that "these exclusions are unenforceable as a matter of law." *Id.* at 138. Though the Court did note certain facts which made Gallagher's case "a prime example of why household vehicle exclusions should not and cannot operate as a pretext to avoid stacking," *id.*—such as the fact that GEICO, having sold Gallagher both his motorcycle and automobile policy, was aware of the potential for stacking—the Court generally "couched its analysis in broad terms," *Donovan*, 392 F. Supp. 3d at 552.

Since *Gallagher*, federal courts sitting in diversity have had occasion to apply its holding to different fact patterns. In *Smith v. Nationwide Mutual Insurance Company*, a district court found that *Gallagher* applied where a plaintiff sought to stack benefits across policies issued by

6

different insurers. 392 F. Supp.3d 540, 545 (E.D. Pa. 2019). The court held that the plaintiff-son stated a valid breach of contract claim against his parents' insurer after the insurer denied him stacked benefits under his parents' policy, notwithstanding the fact that the son and the parents were insured by different companies. *Id.*[9] Rather than focusing on the fact that the *Smith* plaintiff sought to stack across plans from different insurers while the *Gallagher* plaintiff had sought to stack across plans from the same insurer, the *Smith* court found the knowing waiver question—*i.e.*, whether the policyholders had knowingly waived stacked coverage on the policy under which coverage was being sought—to be the issue of legal significance. *Id.* Because the parents had elected stacking, and because the "household vehicle exclusion in the [parents'] policy . . . act[ed] as a 'de facto waiver of stacked [underinsured motorist] coverage,'" the district court found that the household exclusion violated the MVFRL. *Id.*

Then, in *Donovan*, a district court held a household exclusion unenforceable where an insurer denied a son's claim for stacked benefits under his mother's policy, despite the fact that both the mother and the son had signed stacking waivers under their respective policies. 392 F. Supp.3d at 552. The mother's waiver (*i.e.*, the waiver applicable to the policy under which coverage was being sought) had explicitly disclaimed coverage for stacking *across vehicles* but had not explicitly referenced stacking *across policies*. *Id.* at 548. The court reasoned that because the waiver had only addressed *intra-policy* stacking, it had not been knowing as to *inter-policy* stacking, and thus had violated the MVFRL. *Id.* at 552. In sum, the *Donovan* court held that a waiver of intra-policy stacking does not automatically operate as a waiver of inter-policy stacking.

Defendants argue that, unlike in *Smith* and *Donovan*, *Gallagher* does not apply in this

---

[9] The son in both *Smith* and *Donovan* (discussed below), resided with their parents at the time of the accidents at issue.

7

case.[10]  First, they argue that *Gallagher* was a "narrow" decision that should be limited to its facts.  Second, they argue that the facts at hand "contrast sharply with the facts in *Gallagher*," such that its holding is inapplicable here.  Specifically, they note that, unlike the *Gallagher* plaintiff, Stockdale did not purchase stacking.  And, they note that, unlike in *Gallagher*, "the two policies plaintiff seeks to stack were purchased by two *different* insureds."

Allstate's assertion that the Pennsylvania Supreme Court intended *Gallagher* to be a "narrow" decision is misleading.  Allstate makes much of a footnote stating that "[o]ur focus here is narrow."  *Gallagher*, 201 A.3d at 138 n.8.  That phrase, however, was written in the context of explaining that the majority's opinion did not endanger *other*, non-household coverage exclusions such as "exclusions related to racing and other inherently dangerous activities"[11] and does not narrow the scope of its holding as to the household exclusion.  *Id.*  The Pennsylvania Supreme Court must be presumed to have meant what it said when it wrote that "household vehicle exclusions should not and cannot operate as a pretext to avoid stacking" and that "these exclusions are unenforceable as a matter of law," and this Court declines to read any limiting language into that clear pronouncement.

Allstate also makes much of the fact that, in August 2019—just seven months after issuing *Gallagher*—the Pennsylvania Supreme Court cited approvingly to *Eichelman v. Nationwide Insurance Company*, 711 A.2d 1006, 1008 (1998) in *Safe Auto*, 214 A.3d at 1266.  In

---

[10] Defendants also argue that *Donovan*, which is currently on appeal, was wrongly decided and that this Court should not rely on *Donovan* pending the appeal.  Of course, *Donovan* is not binding on this Court, and this decision does not depend on *Donovan*'s continuing validity.  Until the Third Circuit rules, however, *Donovan* remains valid persuasive authority.

[11] The Pennsylvania Supreme Court's cautionary words have informed subsequent decisions.  In *Barnhart v. Travelers Home & Marine Insurance Company*, for example, a district court declined to interpret *Gallagher* as invalidating the "regular use exclusion."  2019 WL 5557374, at *4 (W.D. Pa. Oct. 28, 2019).  And, in August 2019, the Pennsylvania Supreme Court itself declined to invalidate the "unlisted resident driver exclusion" in *Safe Auto Insurance Company v. Oriental-Guillermo*, 214 A.3d 1257, 1259 (Pa. 2019).

*Eichelman*, the Pennsylvania Supreme Court enforced a household exclusion and held that "a person who lived with his parents could not recover under their policy after he suffered injury riding his motorcycle." *Butta v. GEICO Cas. Co.*, 383 F. Supp.3d 426, 431 (E.D. Pa. 2019) (citing *Eichelman*, 711 A.2d at 1010). The *Eichelman* plaintiff did not have *any* underinsured motorist coverage on his motorcycle, however, meaning stacking and stacking waivers were not at issue. *See Eichelman*, 711 A.2d at 1007; *see also Butta*, 383 F. Supp.3d at 431 (suggesting that *Gallagher* and *Eichelman* are not in conflict because *Eichelman* "had no occasion to discuss stacking"). *Eichelman* and *Gallagher* are not in conflict. And, the Supreme Court's citation to *Eichelman*, post-*Gallagher*, does not narrow *Gallagher*'s holding.

Furthermore, while it is a truism that cases must be decided on their facts, the contrasting facts that Allstate identifies are not material and therefore do not meaningfully distinguish this case from *Gallagher*. The fact that Stockdale did not purchase stacking "is irrelevant" because "it is the [Sanders'] lack of waiver" that has legal significance. *Donovan*, 392 F. Supp.3d at 549. Per the Pennsylvania Supreme Court's decision in *Craley*, it is the coverage elections for the policy under which coverage is being sought that are controlling, not the coverage elections of the person seeking coverage. 586 Pa. at 536. Here, Stockdale is making a claim under the Sanders Policy, so it is her parents' coverage election—as relevant here, their decision to purchase stacked coverage—which is significant. While Allstate emphasizes the seeming unfairness of allowing Stockdale to recover stacked benefits that she did not pay for, Allstate does not contest that Stockdale, as a "resident relative," is an "insured person" under the Sanders Policy.[12] Stockdale may not have purchased stacked coverage for herself, but her parents

---

[12] If Allstate contests the unfairness of allowing Stockdale to recover under the Sanders Policy, it may as well also contest the supposed unfairness of allowing any person other than the policyholder (who is presumably the person paying for the coverage) to recover under a policy at all. Allstate, however, includes resident relatives as "insured persons" in its policies, and, as the drafter of the insurance contract, must be held to the terms that it devised. *C.f.*

purchased such coverage for all "resident relative[s]" in their household, and "an insured should receive the coverage for which he has paid." *Gallagher*, 201 A.3d at 138.

The fact that Stockdale is seeking to stack policies purchased by two differed insureds is also irrelevant. The MVFRL requires a knowing waiver of stacking regardless of who is buying the insurance or who the insurance is being bought from. Since the coverage elections of the Sanders Policy control, the relevant question is whether Sanders waived stacking, and the answer to that questions is unquestionably "no."

Despite Allstate's insistence that *Gallagher* is distinguishable, the facts in this case are in fact much closer to those in *Gallagher* than the facts in *Smith* and *Donovan*—both cases in which district courts founds *Gallagher* applicable. In *Smith*, plaintiff-son and his parents had different insurers. Here, by contrast, as in *Gallagher*, both Stockdale and the Sanders were insured by the same insurer, Allstate. In *Donovan*, both plaintiff-son and his mother had signed a stacking waiver, while here, the Sanders did not sign a waiver and paid for stacking. Notwithstanding these differences with *Gallagher*, both the *Smith* and *Donovan* courts found that *Gallagher* applied because they focused on the fact of critical significance to the *Gallagher* court: the existence of a valid stacking waiver. Because neither the policyholders in *Smith* nor *Donovan* (*i.e.*, the parent) had knowingly waived the stacking coverage which an insured (*i.e.*, the child) was subsequently denied pursuant to a household exclusion, the courts in those cases found the exclusion violated the MVFRL's waiver requirement. The same is true in this case.

Here, it is undisputed that Stockdale is making a claim under the Sanders Policy and that she was an insured under that policy. Because it is also undisputed that the Sanders did not waive stacked coverage, and because a household exclusion "cannot operate as a pretext to avoid

---

*Dwyer v. Mayer*, 26 Pa. D. & C.3d 401, 412 (Pa. Com. Pl. 1982).

stacking" or a "de facto waiver" of stacked coverage, the household exclusion in the Sanders Policy is "unenforceable as a matter of law." *See Gallagher*, 201 A.3d at 138.

## IV.   CONCLUSION

Because *Gallagher* is controlling in this case, Allstate's Motion for Summary Judgment shall be denied, and Stockdale's Motion for Partial Summary Judgment shall be granted. Allstate shall be required to pay the $300,000 in stacked coverage available to Stockdale under the Sanders Policy.[13]

An appropriate Order follows.


**February 27, 2020**                              **BY THE COURT:**


                                                   **/s/Wendy Beetlestone, J.**

                                                   _____
                                                   **WENDY BEETLESTONE, J.**

---

[13] Defendant also argues that Stockdale's class claims fail because her individual claim fails. Because Stockdale has succeeded on her individual claim, the class claims will not be dismissed on this basis. *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992) (explaining that before a class has been certified, the viability of the class claims normally depends on the viability of the individual claim)