**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KAYLA STOCKDALE, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,<br><br>     Defendant. | No. 2:19-CV-00845-WB |

## <u>AMENDED CLASS ACTION SETTLEMENT AGREEMENT</u>

Plaintiff Kayla Stockdale, acting individually and on behalf of the Settlement Class ("Plaintiff") as defined herein, and Defendant Allstate Fire and Casualty Insurance Company ("Defendant" or "Allstate") enter into this Settlement Agreement ("Agreement") as of this June 25, 2021. Plaintiff and Allstate are collectively referred to herein as the "Parties" and each, individually, as a "Party." Capitalized terms used herein are defined in Section II of this Agreement or indicated in parentheses elsewhere in this Agreement. Subject to the Court's approval, the Parties hereby stipulate and agree that, in consideration for the promises and covenants set forth in the Settlement and upon the entry by the Court of a Final Approval Order and the occurrence of the Effective Date, the Action shall be settled and compromised upon the terms and conditions contained herein.

## I. <u>RECITALS</u>

1.1 Plaintiff Kayla Stockdale filed a class action complaint ("Action" or the "Stockdale Action") against Allstate on January 23, 2019 in the Court of Common Pleas of Philadelphia County Docket No. 190102151.

**1.2**    Defendant filed a notice of removal to the United States District Court for the Eastern District of Pennsylvania on February 27, 2019.

**1.3**    On March 28, 2019, Defendant Allstate filed a Motion to Dismiss Plaintiff's complaint.

**1.4**    On April 18, 2019, Plaintiff filed an Answer to the Motion to Dismiss.

**1.5**    On June 18, 2019, this Honorable Court granted in part and denied in part Defendant's Motion to Dismiss.

**1.6**    On July 2, 2019, Allstate filed an answer and affirmative defenses to Plaintiff's complaint.

**1.7**    Discovery ensued, during which the Parties propounded and responded to written discovery, and documents were produced and reviewed by the Parties.

**1.8**    On December 6, 2019, Defendant filed a Motion for Summary Judgment

**1.9**    On December 23, 2019, Plaintiff filed an Answer to Defendant's Motion for Summary Judgment

**1.10**    On December 30, 2019, Plaintiff filed a Motion for Partial Summary Judgment.

**1.11**    On January 21, 2020, Defendant filed an Answer to Plaintiff's Motion for Partial Summary Judgment.

**1.12**    On February 27, 2020 this Honorable Court granted Plaintiff's Motion for Partial Summary Judgment and denied Defendant's Motion for Summary Judgment.

**1.13**    On April 8, 2020, this Honorable Court denied Defendant's Motion to Certify the Court's summary judgment ruling for interlocutory appeal under Fed. R. Civ. P. 54(b).

**1.14**    Since then, the Parties engaged in extensive arm's-length settlement negotiations, including discovery concerning the Allstate Companies' use of the household

exclusion in Pennsylvania motor vehicle insurance policies offering uninsured and underinsured motorist ("UM/UIM") coverage during the relevant time period. The Parties have identified 48 Class Members whose claims may qualify for the payment of Settlement Benefits if they do not opt out of the Settlement, timely file Claim Forms and comply with the other procedures set forth in this Agreement. The Parties have reached an agreement on the procedures for implementing the settlement, as set forth herein, subject to the approval of this Court.

1.15    In addition, the Parties have agreed that the publicity generated by the Stockdale Action – which was filed hours after the Pennsylvania Supreme Court issued its decision in *Gallagher v. GEICO Indemnity Company*, 201 A.3d 131 (Pa. 2019) – may have resulted, in part, in the assertion of 34 additional claims brought by individual insureds through their own counsel after the Stockdale Action was filed, with a total policy limits exposure of $2,915,000.00. While these claims are not included in this Settlement, they do represent a benefit to policy holders.

1.16    After the Parties reached agreement on the benefits to the Class, the parties then separately negotiated and reached an agreement concerning attorneys' fees, litigation expenses, and a service award payment to Plaintiff. The Parties executed a Memorandum of Understanding on September 2, 2020, subject to the execution of this Agreement and approval of the Court.

1.17    Plaintiff believes that the claims asserted in her case have merit and that the evidence developed to date supports her claims. However, Plaintiff is mindful of the issues of proof under, and possible defenses to, the claims in this matter. Plaintiff further recognizes and acknowledges the expense and length of time it would take to prosecute this matter against Allstate through class certification, trial, post-trial proceedings, and appeals. Counsel for Plaintiff have

taken into account the uncertain outcome and risks of the litigation, including the difficulties and delays inherent in such litigation and the likelihood of protracted appeals. Counsel for Plaintiff have, therefore, determined that the Settlement set forth in this Agreement is fair, reasonable, and adequate. The Settlement confers substantial benefits upon, and is in the best interests of, the Plaintiff and the Settlement Class (hereafter defined).

      **1.18**    Allstate denies all liability and maintains that it has a number of meritorious defenses to class certification and the claims asserted in this case. Nevertheless, Allstate recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals, and the disruption to its business operations arising out of class action litigation.  Allstate also recognizes the risk that a trial on class-wide claims might present.  Accordingly, Allstate believes that the Settlement set forth in this Agreement is likewise in its best interests.

## II.  <u>DEFINITIONS</u>

      As used in this Agreement and the attached exhibits (which are an integral part of the Settlement and are incorporated in their entirety by reference), the following terms shall have the meanings set forth below, unless this Agreement specifically provides otherwise.  Other capitalized terms in this Agreement but not defined in this section shall have the meanings ascribed to them elsewhere in this Agreement.

      **2.1**    "Administration Expenses" means reasonable fees and expenses incurred by the Settlement Administrator for all tasks the Settlement Administrator and any third parties perform in furtherance of the notice and administration of the Settlement and to secure performance as set forth in this Settlement Agreement.

**2.2**    "Agreement" or "Settlement Agreement" means this class action settlement agreement containing all terms, conditions, and exhibits comprising the entire agreement between the Parties.

**2.3**    "Allstate Companies" means, collectively, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Encompass Insurance, Esurance Insurance Company and Esurance Property and Casualty Insurance Company, all of which utilized a substantially similar household exclusion provision in their Pennsylvania motor vehicle insurance policies offering UM/UIM coverage during the relevant time period.

**2.4**    "Attorneys' Fees and Costs" means such funds as may be awarded by the Court based on the Settlement described herein to compensate Class Counsel as determined by the Court, as described more particularly in Section VII of this Settlement.

**2.5**    "Authorization" means the form that a Class Member will execute granting permission for access to medical and other records needed to evaluate the Class Member's claim.

**2.6**    "Benefit(s)" or "Settlement Benefit(s)" means the monetary payment available by check to a Class Member who does not opt out of this Settlement, who files a timely Claim Form under this Agreement, complies with the other procedures set forth in this Agreement and qualifies for payment of insurance benefits based upon Allstate's evaluation of the claim or, if Allstate's evaluation is disputed, the determination of the Special Master which shall be final and binding on the Parties, provided the Benefits paid to any individual Class Member shall not exceed the Policy Declaration Value for UM/UIM coverage on the Allstate policy in question.

**2.7**    "Claim" means a request for relief pursuant to this Settlement submitted by the Class Member on a Claim Form filed with the Settlement Administrator in accordance with the terms of this Agreement.

**2.8**    "Claim Deadline" means the date by which all Claim Forms must be postmarked or electronically submitted to the Settlement Administrator pursuant to the terms of this Agreement.  Subject to the approval of the Court, this date shall be forty-five (45) days after the Administrator sends the Claim Form Notice  to the Class Members.

**2.9**    "Claim Form" means the document, which will be appended to the Claim Form Notice sent to Class Members within ten (10) days after the Opt-Out Deadline, that Class Members must timely submit, as set forth this Agreement, to be eligible to have their Claims evaluated for the possible payment of Settlement Benefits.  A copy of the proposed Claim Form, together with the proposed Claim Form Notice, is attached to this Agreement as <u>Exhibit B</u>.  Among other things, the Claim Form will contain an Authorization for Release of Information that must be completed by the Class Member so that medical, employment and/or other relevant information and documentation can be obtained by Allstate and Class Counsel for purposes of Allstate's evaluation of the Claim.   Class Members who do not opt out and who do not timely submit a Claim Form before the Claim Deadline will be deemed to have waived the right to obtain Settlement Benefits pursuant to this Agreement, but they will otherwise be bound by the terms of this Agreement and any judgments entered by the Court in connection with this Settlement.

**2.10**    "Claim Form Notice" means the notice that a Class Member will receive if the Class Member does not opt out of the Settlement. The Claim Form Notice will be accompanied by a Claim Form and Authorization.

**2.11**    "Claim Resolution Period" means the period commencing the day after the Claim Deadline and concluding one-hundred and eighty (180) days thereafter.  During the Claim Resolution Period, information and documentation relevant to the Claims will be obtained by the Parties from medical providers, employers and/or other third parties, the

Claims will be evaluated by Allstate and any appeals to the Special Master will be resolved. The Court may extend the Claim Resolution Period upon the request of the Parties and/or the Special Master.

**2.12**    "Class Counsel" means Jonathan Shub of Shub Law Firm LLC, James C. Haggerty of Haggerty, Goldberg, Schleifer, & Kupersmith, P.C., and Scott B. Cooper of Schmidt Kramer, P.C.

**2.13**    "Class Member(s)," "Settlement Class Member(s)" or "Settlement Class" means all Persons who submitted UM or UIM motorist claims to any of the Allstate Companies which were denied after January 23, 2015 by reason of the household exclusion in the Allstate Policy under which claim had been made, who did not otherwise opt out of the class in accordance with the terms of this Agreement and who satisfy all other requirements of this paragraph. Class Members shall include all such Persons where: (a) the named insured had not waived inter-policy stacking; (b) a claim was made for recovery of UM or UIM motorist coverage under the policy; and (c) the claim for recovery of UM or UIM motorist coverage was denied by any of the Allstate Companies by reason of the household exclusion after January 23, 2015. Excluded from the Class are (i) Persons whose claims were asserted after January 23, 2019 by individual insureds, through their own counsel; (ii) Persons who opt-out of the Settlement in accordance with the terms of this Agreement; and (iii) the Allstate Companies, any parent, subsidiary, affiliate, or controlled person of the Allstate Companies, as well as the officers, directors, agents, servants, and employees of the Allstate Companies, any trial judge who may preside over this Action and Class Counsel.

**2.14**    "Class Notice" means the notice of pendency and proposed settlement of the Stockdale Action that the Parties will ask the Court to approve in connection with the Motion

for Approval of Class Notice of Settlement. Among other things, the Class Notice will set forth the procedures for opting out of the Class, submitting Claim Forms and objecting to the Settlement. The Class Notice, which will be mailed and/or emailed to Class Members and which will also be available to Class Members on the website created and maintained by the Settlement Administrator, shall be in the form of Exhibit A to this Agreement. Within ten (10) days of the Court's entry of the Order Approving Class Notice of Settlement, Allstate will provide the Settlement Administrator with the names, last known email address (if available), and postal addresses of all Class Members. The Settlement Administrator will send the Class Notice to Class Members by both email (where available) and direct mail within thirty (30) days after receiving the foregoing contact information from Allstate.

2.15    "Class Representative" means Kayla Stockdale.

2.16    "Court" means the United States District Court for the Eastern District of Pennsylvania.

2.17    "Defendant" or "Allstate" means Allstate Fire and Casualty Insurance Company, including its officers, directors, owners, operators, parents, subsidiaries, employees, agents, representatives, lawyers, insurers, and/or affiliates.

2.18    "Effective Date" means the tenth day after the date on which all the following conditions are satisfied:

a.    Execution of this Agreement by the Class Representative and Allstate;

b.    Entry of the Final Approval Order and Judgment by the Court approving this Agreement and all exhibits in substantially the form attached hereto;

c.    The passage of the earliest date on which: (i) the time for taking an appeal from the Final Approval Order and Judgment has expired, without any appeal having been

taken; or (ii) if an appeal is taken, the highest court to which such appeal may be taken affirms the Final Approval Order and Judgment or dismisses the appeal without, in either case, any modification of the Final Approval Order and Judgment that is in any respect unsatisfactory to the Parties.

2.19    "Fairness Hearing" or "Final Approval Hearing" means the final hearing to be conducted by the Court, on notice to the Settlement Class, to consider approval of the Settlement and Class Counsel's motion for approval of attorneys' fees and reimbursement of costs and expenses and the Named Plaintiff Enhancement Award. The Parties will ask the Court to schedule a Fairness Hearing approximately three hundred and twenty (320) days from the entry of the Order Approving Class Notice of Settlement unless the parties otherwise agree on an earlier or later date and the Court so approves.

2.20    "Final Approval Order" means the Order granting final approval to the Settlement, which should not be entered earlier than ninety (90) days after the appropriate state and federal officials have been served with notice of the Settlement in accordance with the Class Action Fairness Act of 2005, as codified in 28 U.S.C. § 1715(b).

2.21    "Individual Settlement Amount" means the monetary amount that is allocated to a Class Member whose Claim qualifies for payment of Settlement Benefits based upon Allstate's evaluation of the Claim or, if Allstate's evaluation is disputed, the determination of the Special Master which shall be final and binding on the Parties, provided the Individual Settlement Amount paid to any individual Class Member shall not exceed the Policy Declaration Value for UM/UIM coverage on the Allstate policy in question.

**2.22**   "Named Plaintiff Enhancement Award" means the monetary amount awarded by the District Court in recognition of the assistance provided by the Plaintiff in the prosecution of the Stockdale Action, the amount of which is as set forth in Section VII.

**2.23**   "Objection" means an objection filed with the Court by a member of the Settlement Class, objecting to any aspect of the Settlement.

**2.24**   "Objection Deadline" means the last date on which a Class Member may object to the Settlement.  Subject to the approval of the Court, this date shall be forty-five (45) days prior to the Final Approval Hearing.

**2.25**   "Opt-Out" means a request by a Class Member to be excluded from the Settlement Class by following the procedures set forth in the Class Notice.

**2.26**   "Opt-Out Deadline" means the last date on which a Class Member may request to be excluded from the Settlement Class.  Subject to the approval of the Court, this date shall be forty-five (45) days after the date the Administrator sends the Class Notice to the Class Members.

**2.27**   "Order Approving Class Notice Date" means the date on which the Court enters the Order Approving Class Notice of Settlement.

**2.28**   "Order Approving Class Notice of Settlement" means the Order certifying the Settlement Class solely for the purposes set forth in this Agreement, and approving the form of notice to Class Members and shall be substantially in the form of Exhibit C to this Agreement.

**2.29**   "Person" means any natural person, corporation, partnership, business organization or association, or other type of legal entity.

**2.30**   "Released Claims" means and includes any and all manner of actions, causes of action, suits, accounts, claims, demands, controversies, judgments, obligations, damages

and liabilities of any nature whatsoever, whether or not now known, suspected or claimed, from the beginning of time to the date of this Release (a) that were asserted, or could have been asserted, by or on behalf of Plaintiff Kayla Stockdale, Christopher Stockdale, Mark Sanders or Jacqueline Sanders, as Releasing Parties, against Allstate Fire and Casualty Insurance Company or any other Released Person (*i.e.*, Allstate Indemnity Company, Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Encompass Insurance, Esurance Insurance Company or Esurance Property and Casualty Insurance Company) in connection with, relating to or arising out of the Stockdale Action, or (b) that were asserted, or could have been asserted, by or on behalf of any Class Member, as Releasing Parties, against any Released Person (*i.e.*, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Encompass Insurance, Esurance Insurance Company and Esurance Property and Casualty Insurance Company), in connection with, relating to or arising out of the denial by any of the Released Persons of the Class Members' uninsured or underinsured motorist claims seeking benefits under Pennsylvania motor vehicle insurance policies by reason of the household exclusion during the relevant time period, including but not limited to claims in connection with, relating to or arising out the conduct alleged in the Stockdale Action.

**2.31**   "Released Persons" means Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Encompass Insurance, Esurance Insurance Company and Esurance Property and Casualty Insurance Company, individually or collectively, and their parents, subsidiaries, affiliates, predecessors, successors, and assigns, as well as their respective current

and former officers, directors, members, stakeholders, owners, employees, agents, attorneys and insurers.

2.32    "Releasing Parties" means Plaintiff Kayla Stockdale, all Settlement Class Members, Class Counsel, and any Person claiming by or through him/her/it/them, including any Person claiming to be his/her/its/their spouse, parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, devisee, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, employee or affiliate, including but not limited to Kayla Stockdale, Christopher Stockdale, Mark Sanders and Jacqueline Sanders.

2.33    "Settlement" means all of the terms and conditions of and the exhibits attached to this Agreement.

2.34    "Settlement Administrator" means the third-party administrator that will be charged with administering this Settlement as specified in this Agreement.   The Settlement Administrator, subject to Court approval, will be Angeion Group unless another third-party administrator is later agreed to by the Parties in writing and approved by the Court.

2.35    "Settlement Website" means an internet website created and maintained by the Settlement Administrator. The URL of the Settlement Website shall be provided in the Class Notice.

2.36    "Special Master" means the individual appointed by the Court pursuant to Fed. R. Civ. P. 53 to decide any appeals from Allstate's evaluation of Class Members' claims and whose decision shall be final and binding on the Parties, provided the Individual Settlement Amount paid to any individual Class Member shall not exceed the Policy Declaration Value for UM/UIM coverage on the Allstate policy in question.   The parties have agreed and request that Harris Bock, Esquire of the Dispute Resolution Institute of Philadelphia, Pennsylvania be appointed by the

Court as Special Master under Fed. R. Civ. P. 53 to perform that function. The Special Master shall be bound by the Stipulation of Confidentiality entered in this Action and shall execute the Acknowledgement attached as Exhibit A to said Stipulation.

## III.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

3.1    The Parties agree that the Stockdale Action may be certified as a class action under Fed. R. Civ. P. 23(a) and (b)(3) solely for purposes of settlement in accordance with the terms of this Agreement and without prejudice to Allstate's right to contest class certification in the event that this Agreement fails to become effective or is not fully implemented in accordance with its terms.

If the Settlement is not approved or this Agreement fails to be fully implemented, the Allstate Companies reserve all rights to object to any subsequent motion to certify a class in this or any other lawsuit and no representation or concession made in connection with the Settlement or this Agreement shall be considered law of the case or an admission by the Allstate Companies or to have any kind of preclusive effect against the Allstate Companies or to give rise to any form of estoppel or waiver by the Allstate Companies in this action or any other proceeding.

3.2    The Allstate Companies expressly deny any and all liability and/or wrongdoing with respect to any and all of the claims alleged in this lawsuit and any similar lawsuit and enter into this Settlement solely to compromise disputed claims. Accordingly, any references to the alleged business practices of the Allstate Companies in this Settlement, this Agreement or the related Court hearings and processes shall raise no inference respecting the propriety of those business practices or any other business practices of the Allstate Companies.

3.3    Nothing contained in this Agreement shall preclude any of the Allstate Companies from asserting coverage or other applicable defenses in claims that are not subject to this Agreement, and the Allstate Companies expressly reserve the right to assert such defenses.

## IV.    <u>REQUIRED EVENTS</u>

As soon as practicable after the execution of this Agreement, Class Counsel shall file this Agreement and a Motion seeking Preliminary Approval of the class settlement and an Order Approving Class Notice of Settlement, which order by its terms shall accomplish all of the following:

**4.1**    Conditionally certify the Settlement Class solely for the purpose of effecting the Settlement;

**4.2**    Designate Plaintiff as the representative of the Settlement Class;

**4.3**    Designate Class Counsel as counsel for the Settlement Class;

**4.4**    Appoint Harris Bock, Esquire as the Special Master to hear appeals (if any) from Allstate's evaluation of Class Members' Claims and whose decision shall be final and binding on the Parties, provided the Individual Settlement Amount paid to any individual Class Member shall not exceed the Policy Declaration Value for UM/UIM coverage on the Allstate policy in question.

**4.5**    Approve the Settlement Administrator and instruct the Settlement Administrator to perform the following functions, among others, in accordance with the terms of this Agreement, the Order Granting Preliminary Approval to the class settlement and the Order Approving Class Notice to class members:

a.    Establish the Settlement Website, which Class Members can visit to read and obtain additional information regarding the Settlement, including submission of Claim Forms.

b.    Disseminate Class Notice, Claim Form Notice, Claim Form and Authorization in accordance with the terms of this Agreement;

c.    Process Claim Forms in accordance with Section V of this Agreement;

d.    Process requests for Opt-Outs from the Settlement in accordance with Section IX of this Agreement;

e.    Process Objections to the Settlement in accordance with Section IX of this Agreement.

**4.6**    Approve the form, contents, and method of notice to be given to the Settlement Class as set forth in Section VI of this Agreement, and direct the Settlement Administrator to provide, or cause to be provided, such notice and to file with the Court a declaration of compliance with those notice requirements, as set forth in Section VI of this Agreement.

## V.    SETTLEMENT CONSIDERATION AND PROCEDURES FOR PROVIDING BENEFITS TO SETTLEMENT CLASS MEMBERS

### 5.1    Benefit Available to Settlement Class Members

a.    In order to qualify for a Settlement Benefit, Class Members must timely submit a completed Claim Form (substantially in the form of Exhibit B). This can be done on the Settlement Website on or before the Claim Deadline. Class Members may also submit a paper copy of the Claim Form. Claim Forms submitted via mail must be postmarked on or before the Claim Deadline. In consideration of the Settlement and Release given herein, Allstate will make Settlement Benefits available by instructing the Settlement Administrator to issue a check to each Class Member who: (a) does not opt out of the Settlement; (b) timely submits a Claim Form; (c) executes an authorization; (d) complies with the other procedures set forth in this Agreement and (e) qualifies for payment of Settlement Benefits based upon the determination of Allstate or the decision of the Special Master to whom any appeal of the decision of Allstate was taken pursuant to the provisions of this Agreement, and whose decision shall be final and binding on the Parties, provided the

Individual Settlement Amount paid to any individual Class Member shall not exceed the Policy Declaration Value for UM/UIM coverage on the Allstate policy in question.

b.     In the event of an appeal of Allstate's evaluation of a Class Member's Claim, Allstate shall make available to the Special Master all of the information and documentation that was obtained from the Class Member or third parties in connection with Allstate's evaluation of the Claim, which, together with the non-privileged portions of Allstate's claim file for that Claim referenced in Section 5.1.c, shall constitute the sole basis for the Special Master's decision. The Special Master's decision shall be final and binding on the Parties, provided the Individual Settlement Amount paid to any individual Class Member shall not exceed the Policy Declaration Value for UM/UIM coverage on the Allstate policy in question.

c.     The Settlement Administrator will provide copies of the Class Members' Claim Forms and Authorizations to Allstate and Class Counsel, as they are received from the Class Members, so that Allstate and Class Counsel can obtain the information and documentation needed for Allstate's evaluation of the Claims. Allstate will also share with Class Counsel the non-privileged portions of its existing claim files for the Class Members concerning the Claims that are the subject of this Settlement where such non-privileged portions of the claim file are relevant to placing a value on the Claim, which materials may also be considered by Allstate in evaluating the Class Members' Claims. Allstate and Class Counsel will cooperate throughout the Claim Resolution Period and will agree on procedures for communicating with

Class Members and/or third parties, obtaining information and documentation and facilitating the evaluation of Claims.

d.     At any time during the Claims evaluation process, Allstate and/or Class Counsel may request Class Members and/or third parties to provide additional or supplemental information or documentation pertinent to Allstate's evaluation of the Claim, and Allstate reserves the right to obtain an independent medical examination or a peer review if circumstances warrant. The failure or refusal of a Class Member to cooperate with Allstate or Class Counsel at any stage of the Claim Resolution Period may result in a waiver or denial of the Claim.

e.     The Parties (or the Special Master in the event of an appeal) may request the Court to extend the Claims Resolution Period if additional time is needed.

f.     Class Members who do not opt out but choose not to file a Claim Form or submit requested information and documentation will still be considered part of the Settlement Class. They will be bound by the Release and other provisions of this Agreement and by the Orders and Final Judgment of this Court issued pursuant thereto, but they will not receive any Settlement Benefits.

g.     Class Members who do submit information and documentation following receipt of the Claim Form, who comply with the procedures set forth in this Agreement and who qualify for payment of Settlement Benefits based upon the determination of Allstate or the decision of the Special Master to whom an appeal of the decision of Allstate was taken will receive a check in an amount up to (but not exceeding) the Policy Declaration Value for UM/UIM coverage on the Allstate policy in question, in an amount determined by Allstate or, if an appeal is taken, the Special

Master. Except as set forth in Section 5.2 of this Agreement, no settlement check will be payable unless and until the Court issues a non-appealable Final Order and Judgment approving this Settlement.  The Settlement Administrator will issue the checks after Allstate, within 10 days after the Effective Date, provides funds to the Settlement Administrator.   The timely submission of a Claim Form is not a guarantee or promise that Settlement Benefits will be paid.  Settlement Benefits will be paid only if the Class Member complies with the procedures set forth in this Agreement and Allstate, or the Special Master if an appeal is taken, determines that Settlement Benefits should be paid.

h.      In no event shall Allstate be obligated to pay, in the aggregate, more than $3,225,000 in total Settlement Benefits to the Class Members as a whole.  In no event shall the Individual Settlement Amount paid to any individual Class Member exceed the Policy Declaration Value for UM/UIM coverage on the Allstate policy in question.

i.      The Parties will agree on the selection of one or more Allstate claims adjusters who will place a value upon each Claim within the Settlement Class applying the same valuation criteria used in the ordinary course of business and applying all credits for any priority coverage.  The adjusted dollar value of a Claim could range from a minimum of zero dollars to a maximum of the Policy Declaration Value of UM/UIM coverage depending upon the facts and circumstances of the Claim.

j.      The parties will request that the Court appoint Harris Bock, Esquire of the Dispute Resolution Institute as Special Master to decide any appeals from Allstate's evaluation of Class Members' Claims.  Any such appeal must be filed within thirty

(30) days of Allstate's evaluation of the Claim. The Special Master's decision will be based solely upon his review of the information and documentation that was obtained from Class Members and/or third parties in connection with Allstate's evaluation of the Claim and the non-privileged portions of Allstate's claim file for that Claim.  The uniform cost applicable to any appeal will be a maximum of $1,500 (which amount may be reduced, but not increased, by the Special Master) and each Party will be responsible for 50% of the uniform appeal cost.

k.    The Settlement Benefits described in this Agreement will be available on a "claims made" basis. This Agreement does not create any vested property interest or unclaimed property rights for  Class Members who do not file timely Claim Forms, submit information or documentation requested by Allstate or Class Counsel or fail or refuse to comply with the other procedures set forth in this Agreement. Moreover, a Class Member's timely submission of a Claim Form and compliance with the other procedures set forth in this Agreement do not constitute a guarantee or promise that Settlement Benefits will be paid.  Settlement Benefits will be paid only if Allstate, or the Special Master if an appeal is taken, determines that Settlement Benefits should be paid.

**5.2    Agreement with regard to Plaintiff Kayla Stockdale**

Allstate will not oppose an application that Plaintiff's counsel may submit to the Court requesting early payment to Plaintiff Stockdale of up to 50% of the previously stipulated $300,000.00 limit of stacked UIM coverage potentially available under the Sanders Policy, on the following terms and conditions:

1.      Plaintiff's counsel will not submit such an application unless and until the Court has issued an order preliminarily approving the settlement. No early payment will be due Plaintiff Stockdale if the Court denies the application.

2.      If the Court approves the application, Allstate will not be obligated to pay Plaintiff Stockdale any additional coverage amounts (up to but not exceeding the $300,000.00 stipulated limit) unless and until the Court issues a final judgment approving the settlement and all appeals from such judgment have been exhausted or the time for filing an appeal has expired.

3.      Alternatively, if the Court approves the application but denies final approval of the settlement or the settlement otherwise terminates before final Court approval pursuant to the terms of the parties' settlement agreement, Allstate will not be obligated to pay Plaintiff Stockdale any additional coverage amounts (up to but not exceeding the $300,000.00 stipulated limit) unless and until the Court has entered a final judgment against Allstate and in favor of Plaintiff Stockdale on her individual claims and Allstate has exhausted all of its appeal rights from said final judgment.

## VI.    PROCEDURES FOR PROVIDING NOTICE AND BENEFIT TO SETTLEMENT CLASS MEMBERS

**6.1**    The Parties shall jointly ask the Court to approve Angeion Group as the Settlement Administrator. The Settlement Administrator shall, subject to the supervision of the Court, work with the Parties to administer the relief provided by this Agreement. The Settlement Administrator

shall maintain all records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel, Allstate's Counsel, the Parties, and their representatives promptly upon request.

6.2     The Settlement Administrator shall be responsible for, among other things, administering the Settlement Website, sending out the notices to Class Members pursuant to Order of the Court, managing the Opt-Out process, receiving Claim Forms and Authorizations from Class Members and transmitting them to Allstate and Class Counsel, and disbursing the settlement checks.

6.3     Class Members will be identified and contacted based on the records maintained by Allstate provided that, if the Settlement Administrator determines, pursuant to the procedures set forth herein, that a Class Member's current mailing address is different from the last known mailing address, then such current mailing address will be employed for all communications with the Class Member.

6.4     The Parties will be jointly responsible for agreeing upon the form and language of the notices to the Settlement Class and they agree to cooperate in drafting those notices and ensuring that they comply with the requirements of Federal Rule of Civil Procedure 23 and due process, subject to Court approval. Copies of the Class Notice and Claim Form Notice and Claim Form shall be served and filed with the motion seeking Preliminary Approval of Class Settlement.

6.5     No later than thirty (30) days after receiving the Class Members' contact information from Allstate following issuance of the Order Approving Class Notice of Settlement, the Class Notice to the Settlement Class will be provided by regular mail and by email to those Class Members for whom Allstate has an email address on file. For any emails returned to the Settlement Administrator as undeliverable, and for Class Members for whom Allstate does not

have an email address, the Class Notice, alone, will be provided by United States Mail, postage prepaid. Only one email and direct mail Class Notice will be provided to each Class Member. Within ten (10) days after the Opt-Out Deadline, the Claim Form Notice and Claim Form will be provided by regular mail and/or by email to Class Members who did not opt out.  The Class Notice, the Claim Form Notice and the Claim Form will be available on the Settlement Website to all Class Members.

      **6.6**     No later than twenty-one (21) days prior to the Final Approval Hearing, the Settlement Administrator shall certify to the Court compliance with the notice provisions of this Agreement.

      **6.7**     No later than thirty (30) days after the Order Approving Class Notice of Settlement, the Settlement Administrator will create and maintain a website to provide, among other things, copies of the Class Notice and Claim Form Notice to be given to Class Members, this Agreement, the Settlement Administrator's and Class Counsel's contact information, certain selected pleadings and Court orders from the Stockdale Action, and a method for the electronic submission of Claim Forms at the appropriate time. The website will also contain a "frequently asked questions" section, subject to input and approval by the Parties, setting forth, among other things, procedures for completing and submitting a Claim Form and Authorization online or by mail; procedures for requesting exclusion from the Class pursuant to the terms of the Order Approving Class Notice of Settlement; procedures for objecting to the Settlement pursuant to the terms of the Order Approving Class Notice of Settlement; the scheduled date for the Final Hearing, and deadlines relevant to the Settlement as established in the Order Approving Class Notice of Settlement, including the dates for seeking exclusion from the Class, objecting to the Settlement, and filing a Claim Form.

**VII.    CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND NAMED PLAINTIFF ENHANCEMENT AWARDS**

7.1    The Parties agree, subject to Court approval, that James C. Haggerty of Haggerty, Goldberg, Schleifer, & Kupersmith, P.C., Jonathan Shub of Shub Law LLC., and Scott B. Cooper of Schmidt Kramer, P.C. shall be appointed Class Counsel, without prejudice to Allstate's right to contest the appointment in the event that this Agreement is not fully implemented in accordance with its terms. If the Settlement is not approved or this Agreement fails to be implemented fully, Allstate reserves all rights to object to any subsequent motion to appoint class counsel in these or any other actions.

7.2    Class Counsel will submit to the Court an application seeking a Fee Award in the amount of $750,000.00 inclusive of attorneys' fees, expenses, and costs, and a Named Plaintiff Enhancement Award in the amount of $7,500.00. The Fee Award and Named Plaintiff Enhancement Award shall be paid separate and apart from the Settlement Benefits, and shall not take away from or otherwise reduce the monetary relief available to the Settlement Class. Court approval of Class Counsel's Fee Award and the Named Plaintiff Enhancement Award will not be a condition of the Settlement. If the Court denies, in whole or part, Class Counsel's Application for a Fee Award and/or Named Plaintiff Enhancement Award, the remainder of the terms of this Agreement shall remain in effect. In addition, no interest will accrue on such amounts at any time. Neither Class Counsel nor Plaintiff will request any award inconsistent with these terms.

7.3    Allstate agrees that it will not object to the amount of Class Counsel's Application for Fee Award and Named Plaintiff Enhancement Award up to the amount set forth in the preceding paragraph, and agrees that it will pay the amounts approved by the Court no later than fifteen (15) business days after the Effective Date.

**7.4**    Class Counsel shall provide Allstate with all necessary accounting and tax information, including W-9 forms, with reasonable advance notice to allow Allstate to make the Attorneys' Fees and Costs payment and the Named Plaintiff Enhancement Award payment as set forth above.

## VIII.    NOTICES AND DISSEMINATION TO THE SETTLEMENT CLASS

Subject to Court approval, the Parties agree that the Settlement Administrator shall cause Class Notice of the proposed Settlement and the Claim Form Notice to be provided to the Settlement Class by the following methods:

The Parties agree that the Class Notice shall be in the manner and form agreed upon by the Parties and approved by the Court.  Collectively, the Class Notice and the Claim Form Notice shall in general terms set forth and sufficiently inform the Class Members of: (1) a short, plain statement of the background of the Stockdale Action, the Settlement Class certification, and the essential terms of the Settlement; (2) the appropriate means for obtaining additional information regarding the Settlement and the Stockdale Action, and how to participate in the Settlement and Claim Form process; (3) the appropriate information concerning the procedure for Opting-Out from the Settlement and filing an Objection to the Settlement, if they should wish to do so; and (4) that any relief to Settlement Class Members is contingent on the timely submission of a Claim Form, compliance with the provisions of this Agreement and the evaluation of the Claim by Allstate or, if appealed, the Special Master.  The Parties will request the Court to approve the Class Notice in the Motion for Approval of Class Notice of Settlement.  Claim Form Notice shall be disseminated only to those Class Members who did not opt out of the proposed Settlement.

## IX.    OPT OUTS AND OBJECTIONS

Subject to an Order of the Court so providing, the Parties agree that:

### 9.1    Opt-Out

Any Class Member, other than any Class Representative, may elect to be excluded from this Settlement and from the Settlement Class by Opting-Out of the Settlement Class. Any Class Member who desires to be excluded from the Settlement Class must give written notice of the election to Opt-Out on or before the date specified in the Order Approving Class Notice of Settlement, with copies mailed to the Settlement Administrator, Class Counsel, and counsel for Allstate.   Opt-Out requests must: (i) be signed by the Class Member who is requesting exclusion; (ii) include the full name, address, and phone number(s) of the Class Member requesting exclusion; and (iii) include the following statement: "I/We request to Opt-Out from the settlement in the Stockdale v. Allstate Action." No Opt-Out request will be valid unless all of the information described above is included. No Class Member, or any person acting on behalf of or in concert or participation with that Class Member, may exclude any other Class Member from the Settlement Class. The last date for Class Members to Opt-Out of the Settlement will, subject to Court approval, be on the Opt-Out Deadline contained in the Order Approving Class Notice of Settlement. Class Members who timely Opt-Out of the Settlement will not be bound by the terms of this Agreement, including any releases contained herein.

The Class Representative affirmatively supports this Settlement and agrees not to Opt-Out of this Settlement. None of the Class Representative, Class Counsel, Allstate, or its counsel shall in any way encourage any Class Member to opt out or discourage any Class Member from participating in this Settlement.

**9.2**    **Objections**

Any Class Member who wishes to object to the Settlement must file a written Objection and/or a notice of intention to appear before the Court at the Fairness Hearing, and serve copies on the Settlement Administrator, Class Counsel, and counsel for Allstate. To be heard at the Fairness Hearing, the Class Member must make any Objection in writing and file it with the Clerk of Court by the Objection Deadline. The Objection must also be mailed to each of the following, received no later than the last day to file the objection: (i) Class Counsel via Jonathan Shub, Shub Law Firm LLC, 134 Kings Hwy. E., 2nd Floor, Haddonfield, NJ 08033, and (ii) Allstate's counsel via Mark J. Levin, Ballard Spahr LLP, 1735 Market Street, 51st Floor, Philadelphia, PA 19103. Any Objection must (a) attach documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a Class Member; (b) include a statement of such Class Member's specific Objection; (c) state the grounds for the Objection; (d) identify any documents such objector desires the Court to consider; and (e) provide all information requested on the Claim Form.  In addition, any Class Member objecting to the Settlement shall provide a list of all other Objections submitted by the objector, or the objector's counsel, to any class action settlements submitted in any Court in the United States in the previous five years.  If the Settlement Class Member or his/her or its counsel has not objected to any other class action settlement in the United States in the previous five years, he/she or it shall affirmatively so state in the Objection.  Any Objection to be considered timely must be filed by the Objection Deadline contained on the Order Approving Class Notice of Settlement.

## X.    COSTS OF NOTICE AND ADMINISTRATION

Allstate shall be responsible to pay the reasonable Administration Expenses, separate and apart from the amount made available for Class Members' Claims, the Fee Award, and the Named Plaintiff Enhancement Award.  Angeion Group has been selected as the Settlement

Administrator after a review and comparison of estimates made available by claims administration services. Efforts have been made to minimize the costs of notice and administration, including all costs relating to the Settlement by and through Angeion Group.

## XI.    PROCEDURES FOR SETTLEMENT APPROVAL

### 11.1    Approval of Class Notice of Settlement

a.    Promptly after the execution of this Agreement, Plaintiff will move the Court for an order seeking Preliminary Approval of the Class Settlement, approving Class Notice of the class settlement and the Form of Exhibits A (Notice to Potential Class Members) and B (Claim Form Notice and Claim Form) to this Agreement as described in Section VIII above.

b.    Class counsel will request preliminary approval and certification of a settlement class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(a)(l)-(4) and (b)(3), with Plaintiff Kayla Stockdale appointed as Class Representative for the Settlement Class and counsel for Plaintiff, as stated herein, appointed as Class Counsel for the Settlement Class;

c.    Class counsel will request that the Court set a date for the Fairness Hearing, upon notice to the Settlement Class, to consider:

1.    whether the Settlement should be approved as fair, reasonable, and adequate and whether the Released Claims of the Settlement Class against the Released Persons should be dismissed with prejudice;

2.    Class Counsel's motion for an award of attorneys' fees, costs and expenses; and

3.    the Named Plaintiff Enhancement Award.

d.      Class Counsel will file a Motion for Final Approval of Settlement, and an application for the award of attorneys' fees, costs, and enhancement award for Kayla Stockdale, no later than thirty (30) days after the final determination of the Settlement Benefits to be paid to Class Members as determined by Allstate or, in the event of appeal(s), the Special Master.

e.      Upon the filing of the Motion for Preliminary Approval of Class Settlement, the Settlement Administrator will provide notice of the Settlement to the appropriate officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the costs of such notice to be paid by Allstate.

**11.2    Final Approval of the Court**

This Agreement and the Settlement embodied herein are subject to Final Approval by the Court after the determination of the Class Member(s) who may be qualified to receive Settlement Benefits based upon the evaluation of the Claim by Allstate or the final award of the Special Master if an appeal was filed.  If the Settlement is approved, the Court will enter a judgment dismissing the claims against Allstate and the Allstate Companies with prejudice.

If this Agreement or any part of it is materially modified by the Court or is materially modified upon appeal or remand, either Party may terminate this Agreement pursuant to Section XVI.  If no Party timely elects to terminate, then the Parties shall remain bound to the Settlement as so modified. For purposes of this paragraph, a "material modification" is one that significantly affects the rights or obligations of one or more of the Parties. Without limiting the foregoing and by way of illustration only, material modifications include but are not limited to: (1) any material change to the scope of the Released Claims set forth in this Settlement Agreement; (2) any material change to the Final Approval Order which limits or

reduces any of the protections afforded to Defendant; and (3) any material change to the Settlement Benefits, Class Notice, Claim Form, and claim process. No order or action of the Court pertaining to attorneys' fees or expenses shall be considered to constitute a material modification so long as such order, action, or modification does not increase the cost of settlement to be borne by Allstate, and does not require that Allstate do anything not specifically set forth herein. Similarly, no order or action of the Court pertaining to the Named Plaintiff Enhancement Award shall be considered to constitute a material modification so long as such order, action or modification does not increase the cost of Settlement to be borne by Allstate and does not require that Allstate do anything not specifically set forth herein. Any dispute as to the materiality of any modification or proposed modification of this Agreement shall be resolved by the Court.

## XII.   <u>RELEASES</u>

Upon the Effective Date and without any further action by the Court or by any Party to this Agreement, Releasing Parties (including without limitation Plaintiff Kayla Stockdale, the Settlement Class Members, and Christopher Stockdale, Mark Sanders and Jacqueline Sanders), and all of their administrators, executors, personal representatives, spouses, heirs, agents, attorneys, assigns, predecessors and successors, for good and sufficient consideration, the receipt and adequacy of which is acknowledged, shall be deemed to, and shall, in fact, have remised, released and forever discharged any and all Released Claims, which they, or any of them, had or has or may in the future have or claim to have against any of the Released Persons.

The Releasing Parties hereby fully release and forever discharge and covenant not to sue the Released Persons from the Released Claims.

Without limiting the foregoing, the release specifically extends to claims that the Releasing Parties do not know or suspect to exist in their favor at the time that the Settlement,

and the release contained herein, becomes effective. The Releasing Parties acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts that they now know or believe to be true with respect to the subject matter of the Settlement, but that it is their intention to release fully, finally and forever all Released Claims with respect to the Released Parties, and in furtherance of such intention, the release of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

## XIII.   FINAL JUDGMENT AND SETTLEMENT APPROVAL

This Agreement is subject to and conditioned upon the issuance by the Court of the Final Approval Order that finally certifies the Settlement Class for the purposes of this settlement, grants final approval of the Agreement, and provides the relief specified herein, which relief shall be subject to the terms and conditions of the Agreement and the Parties' performance of their continuing rights and obligations hereunder.

## XIV.   REPRESENTATIONS AND WARRANTIES

Each Party represents and warrants to, and agrees with, the other Party as follows:

**14.1**   Each Party has had the opportunity to receive, and has received, independent legal advice from her or its attorneys regarding the advisability of making the Settlement, the advisability of executing this Agreement, and the legal and income tax consequences of this Agreement, and fully understands and accepts the terms of this Agreement.

**14.2**   Allstate represents and warrants: (a) that it has the requisite corporate power and authority to execute, deliver and perform the Agreement and to consummate the transactions contemplated hereby; (b) that the execution, delivery and performance of the Agreement and the consummation by it of the actions contemplated herein have been duly authorized by necessary

corporate action on the part of Allstate; and (c) that the Agreement has been duly and validly executed and delivered by Allstate and constitutes its legal, valid and binding obligation.

14.3    The Class Representative represents and warrants that she is entering into the Agreement on behalf of herself individually and as proposed representative of the Settlement Class Members, of her own free will and without the receipt of any consideration other than what is provided in the Agreement or disclosed to, and authorized by, the Court. The Class Representative represents and warrants that she has reviewed the terms of the Agreement in consultation with Class Counsel and believes them to be fair and reasonable, and covenants that she will not file an Opt-Out request from the Settlement Class or object to the Agreement.

14.4    Plaintiff represents and warrants that no portion of any claim, right, demand, action, or cause of action against any of the Released Parties that Plaintiff has, may have or ever had arising out of this lawsuit or that could have asserted in this lawsuit, and no portion of any recovery or settlement to which Plaintiff may be entitled, has been assigned, transferred, or conveyed by or for Plaintiff in any manner; and no Person other than Plaintiff has any legal or equitable interest in the claims, demands, actions, or causes of action referred to in this Agreement as those of Plaintiff herself.

14.5    Neither Party relies or has relied on any statement, representation, omission, inducement, or promise of the other party (or any officer, agent, employee, representative, or attorney for any other party) in executing this Agreement, or entering the Settlement provided for herein, except as expressly stated in this Agreement.

## XV.    <u>NO ADMISSIONS OF FAULT</u>

The Agreement and every agreement and term contained in it is conditioned upon final approval of the Court and is made for settlement purposes only. Whether or not consummated, this Agreement shall not be construed as, offered in evidence as, received in evidence as, and/or

deemed to be, evidence of a presumption, concession or an admission by Plaintiff, Allstate, the Allstate Companies, or any Class Member or Released Party, of the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in any litigation, or the deficiency of any claim or defense that has been, could have been, or in the future might be asserted in any litigation, or of any liability, fault, wrongdoing or otherwise of such Party.

## XVI.   MISCELLANEOUS PROVISIONS

### 16.1    Termination of Agreement

This Agreement shall terminate: (a) at the election of either Party, in the event of any proposed material modification of this Agreement; (b) prior to approval of this Agreement by the Court, upon the mutual agreement of the Parties by and through their respective counsel; or (c) in the event of any material modification as described in section 11.2 of this Agreement.  In addition to the foregoing and notwithstanding any other provisions of this Agreement, Allstate shall have the unilateral and unconditional right to terminate this Settlement and this Agreement if Potential Class Members representing more than 15% of the total settlement benefits set forth in Paragraph 5.1.h above opt out of the class settlement.

### 16.2    Entire Agreement

This Agreement, together with the Exhibits hereto, constitutes the entire agreement between the Parties with respect to the subject matter of the Settlement and supersedes all prior negotiations, communications, memoranda and agreements between the Parties.  Neither Plaintiff nor Allstate are entering into this Agreement in reliance upon any representations, warranties or inducements other than those contained in this Agreement.

### 16.3    Change of Time Periods

The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Plaintiff's Counsel and Defendant's Counsel, without notice to Class Members except that the Settlement Administrator shall ensure that such dates are posted on the Settlement Website.

### 16.4    Extension of Time

The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

### 16.5    Plaintiff's Authority

Class Counsel represent and warrant that they are authorized to take all appropriate actions required or permitted to be taken by or on behalf of the Plaintiff and, subsequent to an appropriate Court Order, the Settlement Class in order to effectuate the terms of this Agreement and are also authorized to enter into appropriate modifications or amendments to this Agreement on behalf of the Plaintiff and, subsequent to an appropriate Court Order, the Class Members.

### 16.6    Counterparts

This Agreement may be executed in one or more counterparts, all of which together shall be deemed to be one and the same instrument. The Parties agree that a copy of the executed counterparts may be filed with the Court in connection with the motion to approve the Settlement, either in portable document format or some other suitable electronic form, as

an exhibit to Plaintiff's Motion for Approval of Class Notice of Settlement without the need to collate and file a copy with original signatures.

### 16.7    Cooperation

The Parties shall cooperate with the Settlement Administrator to the extent reasonably necessary to assist and facilitate the Settlement Administrator in carrying out its duties and responsibilities. The Parties will also cooperate so that Class Counsel may have such additional confirmatory discovery as is reasonably necessary in connection with this Agreement, without waiver of Allstate's rights and privileges under applicable law.

### 16.8    Binding Nature

This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the Plaintiff, Settlement Class Members, and Allstate.

### 16.9    Construing the Agreement

This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it may have been initially drafted by counsel for only one of the Parties. It is recognized that this Agreement is the result of arm's-length negotiations between the Parties, and it is acknowledged that all Parties have contributed substantially to the preparation of this Agreement; accordingly, the doctrine of *contra proferentem* shall not apply in construing this Agreement, nor shall any other such similar doctrine apply.

### 16.10   Choice of Law

This Agreement shall be governed by and interpreted in accordance with the substantive common law of the Commonwealth of Pennsylvania, exclusive of choice of law principles.

**16.11   Jurisdiction**

The Parties submit to the exclusive jurisdiction of the United States District Court for the Eastern District of Pennsylvania for the purpose of enforcing this Agreement or implementing any part of the Settlement embodied in this Agreement.

**16.12   Headings**

The captions and headings employed in this Agreement are for convenience only, are not a part of the Agreement, and shall not be used in construing or interpreting the Agreement.

**16.13   Media and Contact of Class Members**

To avoid contradictory, incomplete or confusing information about the settlement during the Claim Period, the Parties agree that if they make any written press releases or statements to the media about the settlement before the conclusion of the Claim Period, such releases or statements will be approved by the Parties in advance and, where desired by the other Party, made jointly. Except as noted herein, neither Party will release any public statements nor contact any Class Member in an effort to induce them to file claims except where such Class Members previously contacted Class Counsel.  No Party will make any reference to the total value of the Settlement on any website, or in any promotional material unless approved by the Parties.

**16.14   Evidentiary Preclusion**

The Parties agree that, to the fullest extent permitted by law, neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be or may be used as an admission of, or

evidence of, any fault or omission of any Released Party or the appropriateness of class certification in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. In addition, any failure of the Court to approve the Settlement and/or any objections or interventions may not be used as evidence in the Stockdale Action or any other proceeding for any purpose whatsoever. However, the Released Parties may file the Agreement and/or the Final Approval Order in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

### 16.15  Effect of Non-approval, Non-finality or Termination

In the event that this Agreement is not approved by the Court in substantially its present form, any Objection to the Settlement is sustained by the Court, or the Settlement does not become final for any reason including termination, the terms and provisions of this Agreement shall have no further force and effect with respect to the Parties or the Class Members, and shall not be used in the Stockdale Action or in any other action or proceeding for any purpose, and any order or judgment entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*. In such event, this Agreement and all negotiations, proceedings, documents prepared and statements made in connection with this Agreement shall be without prejudice to any Party or Class Member and shall not be admissible or offered into evidence in any action or proceeding, and shall not be deemed, asserted or construed to be an admission or confession by any Party or any other Person or entity of any fact, matter or proposition of law, and shall not be used or asserted in any other

manner or for any purpose, and all Parties and Class Members shall stand in the same position as if this Agreement and Settlement had not been negotiated, made or submitted to the Court.

**16.16   Effectiveness, Amendments, and Binding Nature**

This Agreement may be amended only in writing signed by the Parties. Except as otherwise stated above, each Party, including Plaintiff on behalf of herself and the Settlement Class, expressly accepts and assumes the risk that, if facts or laws pertinent to matters covered by this Agreement are hereafter found to be other than as now believed or assumed by that party to be true or applicable, this Agreement shall nevertheless remain effective.

This Agreement is binding on, and shall inure to the benefit of, the Parties and their respective agents, employees, representatives, spouses, officers, directors, parents, subsidiaries, assigns, executors, administrators, insurers, and successors in interest. All Released Parties other than Defendant, which is a Party, are intended to be third-party beneficiaries of this Agreement.

**16.17   Stay Pending Court Approval**

Class Counsel and Allstate's Counsel agree to stay all proceedings, other than those proceedings necessary to carry out or enforce the terms and conditions of the Settlement, until the Effective Date of the Settlement has occurred.  If, despite the Parties' best efforts, this Agreement should fail to become effective, the Parties will return to their prior positions in the Stockdale Action, in accordance with Section III of this Agreement.

The Parties also agree to use their best efforts to seek the stay and dismissal of, and to oppose entry of any interim or final relief in favor of any Class Member in, any other proceedings against any of the Released Parties which challenges the Settlement or otherwise asserts or involves, directly or indirectly, a Released Claim.

**16.18  Signatures**

This Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original. Each counterpart shall be deemed an original but all of which together shall constitute one and the same instrument.  Facsimile signatures or signatures sent by email shall be deemed original signatures and shall be binding.

**16.19  Notices**

Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided in writing by first class U.S. Mail and email to:

a.     If to Plaintiff or Class Counsel:

       Jonathan Shub
       Shub Law Firm LLC
       134 Kings Hwy. E.
       2nd Floor
       Haddonfield, NJ 08033

b.     If to Allstate or Allstate's Counsel:

       Mark J. Levin
       BALLARD SPAHR LLP
       1735 Market Street
       51st Floor
       Philadelphia, PA 19103

**16.20  Good Faith**

The Parties agree that they will act in good faith and will not engage in any conduct that will or may frustrate the purpose of this Agreement. The Parties further agree, subject to Court approval as needed, to reasonable extensions of time to carry out any of the provisions of the Agreement.

**16.21  Protective Orders**

All orders, settlement agreements and designations regarding the confidentiality of documents and information ("Protective Orders") remain in effect, and all Parties and counsel

remain bound to comply with the Protective Orders, including the provisions to certify the destruction of "Confidential" documents.

### 16.22  Confidentiality

The terms of this Agreement shall remain confidential until filed in the United States District Court for the District of Pennsylvania.

### 16.23  Binding on Successors

The Agreement shall be binding upon, and inure to the benefit of, the heirs, successors and assigns of the Parties, the Releasing Parties and the Released Persons.

### 16.24  Arms-Length Negotiations

The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement has been by mutual understanding after negotiation, with consideration by, and participation of, the Parties hereto and their counsel. This Agreement shall not be construed against any Party on the basis that the Party was the drafter or participated in the drafting. Any statute or rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the implementation of this Agreement and the Parties agree that the drafting of this Agreement has been a mutual undertaking.

### 16.25  Waiver

The waiver by one Party of any provision or breach of the Agreement shall not be deemed a waiver of any other provision or breach of the Agreement.

### 16.26  Exhibits

All Exhibits to this Agreement are material and integral parts hereof and are incorporated by reference as if fully rewritten herein.

**16.27   No Retention of Jurisdiction**

The Court shall not retain jurisdiction with respect to the implementation and enforcement of the terms of this Agreement after the Effective Date.

**16.28   Taxes**

The Plaintiff, Settlement Class Members, and Class Counsel receiving funds pursuant to this Agreement shall be solely responsible for filing all information and other tax returns necessary or making any tax payments related to funds received pursuant to this Settlement Agreement.  The Parties provide no legal advice and make no representations to the Plaintiff, Class Members, or Class Counsel regarding the legal or tax consequences of this Agreement, including any benefit or monies paid and received. The Plaintiff, Class Members, and Class Counsel shall be solely responsible for any tax or legal consequences for any Benefit paid and/or received pursuant to this Agreement.

**16.29   Support From The Parties**

After a full investigation, discovery and arms-length negotiations, the Parties and their counsel agree that they: (a) have independently determined that this Settlement is in the best interest of the Class; (b) shall support motions for entry of the Order Approving of Class Notice of Settlement and Final Approval Order; and (c) will not encourage any Persons to Opt-Out or file an Objection to the Settlement or this Agreement.

*(Signature pages follow)*

IN WITNESS WHEREOF, the Parties hereto have executed this Amended Agreement, as of the date and year first above written.

Dated this 25th day of June 2021.

Date 6/30/21
James C. Haggerty
Haggerty, Goldberg, Schleifer, &
Kupersmith, P.C.
**Counsel for Plaintiff**

Date 7/1/21
Mark J. Levin
**Ballard Spahr LLP**
**Counsel for Defendant Allstate Fire and**
**Casualty Insurance Company**

Date 6/30/21
Scott B. Cooper
**Schmidt Kramer, P.C.**
**Counsel for Plaintiff**

**Allstate Fire and Casualty Insurance**
**Company**

Jonathan Shub Date 07/01/2021
Jonathan Shub
**Shub Law Firm LLC**
**Counsel for Plaintiff**

By:
Brigette Arnall
Casualty Claims Director
Date: 6/25/21

Date 6/30/2021
Kayla Stockdale
**On Behalf of Plaintiff and the Proposed**
**Settlement Class**

DMEAST #45212158 v1